**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**GLEANERS AND FARMERS CO-OPERATIVE ELEVATOR COMPANY,
Defendant-Appellant.**

**No. 72-1064.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 7, 1973.

Decided July 3, 1973.

Rehearing and Rehearing En Banc
Denied July 31, 1973.

---

See, also, 314 F.Supp. 1148.

Victor John Roberts, Lowell, Ind., Charles W. Grubb, Cedar Lake, Ind., for defendant-appellant.

William C. Lee, U. S. Atty., Charles W. Larmore, Asst. U. S. Atty., Fort Wayne, Ind., for plaintiff-appellee.

Before KILEY, PELL and STEVENS, Circuit Judges.

KILEY, Circuit Judge.

Plaintiff, United States, brought suit[1] against defendant, Gleaners and Farmers Co-operative Elevator Company (Gleaners), for satisfaction of a lien on crops which Gleaners had purchased from borrowers of the United States who defaulted on their obligation to repay the loans. The district court, sitting without a jury, entered judgment for the United States in the amount of $1,920.18. Gleaners has appealed. We affirm.

On January 13, 1966, the United States Department of Agriculture made a loan[2] of $12,000.00 to Donald and Judith Jurs (debtors) and in return accepted a promissory note executed on that date. To secure the indebtedness security agreements were executed in favor of the United States on April 10, 1967 and March 21, 1968 covering, inter alia, crops to be grown by the debtors. Financing statements were also signed by the parties and filed in the appropriate manner on March 24, 1965 and April 13, 1967. Subsequently, Gleaners, a grain elevator in the business of purchasing crops of farmers, purchased a large quantity of grain from the debtors' 1968 crop which was subject to a security interest under the security agreement executed on March 21, 1968. Thereafter the debtors defaulted on their obligations under the promissory note and the litigation subject of this appeal followed.

The vital issue before us is whether the United States had a perfected security interest in the debtors' crops which was effective against Gleaners as purchaser. It is undisputed that the United States is bound by Article IX of the Uniform Commercial Code (U.C.C.).[3]

The U.C.C. as adopted by Indiana provides, in pertinent part: that a security interest does not attach to crops planted more than one year after the security agreement is executed, Burns Ind.Stats. § 19–9–204(4)(a), IC 1971, 26–1–9–204(4)(a); and that a financing statement must be filed to perfect a security interest, Burns Ind.Stats. § 19–9–302, IC 1971, 26–1–9–302, and must comply with the requirements enunciated in Burns Ind.Stats. § 19–9–402, IC

1. Federal jurisdiction rests on 28 U.S.C. § 1345.

2. This was an operating loan made under the provisions of the Consolidated Farmers Home Administration Act of 1961. 7 U.S.C. § 1921 et seq.

3. Burns Ind.Stats. § 19–9–101 et seq., IC 1971, 26–1–9–101 et seq.

1971, 26–1–9–402.[4] We decide the issue before us against this background.

It is conceded by Gleaners that there was a security interest in the 1968 crops between the United States and debtors as a result of the March 21, 1968 security agreement. Gleaners argues, however, that the security interest was never perfected so as to be effective against all subsequent purchasers and creditors claiming an interest in the subject security. Its argument is based on the proposition that the April 13, 1967 financing statement was ineffective to perfect a security interest in the crops which were the subject of the March 21, 1968 security agreement. It also argues that since no financing statement had been filed at the time of or subsequent to the March 21, 1968 security agreement, Gleaners did not have notice of the security interest in the 1968 crops and was not bound thereby.

■ Gleaners' argument, that there was not a perfected security interest in the 1968 crops as a result of the failure to file a financing statement in 1968, ignores two sections of the U.C.C. which provide (1) that "[a] financing statement may be filed before a security agreement is made or a security interest otherwise attaches," Burns Ind.Stats. § 19–9–402; and (2) that the filing of a financing statement is effective for a period of five years unless a shorter period is otherwise stated, Burns Ind. Stats. § 19–9–403, IC 1971, 26–1–9–403. Applying these sections to the facts before us, the April 13, 1967 filing of a financing statement was sufficient to satisfy the requirement necessary to perfect a security interest under the March 21, 1968 security agreement.

Moreover, Gleaners does not argue that the April 13, 1967 financing statement was not broad enough to cover the March 21, 1968 security agreement. We, therefore, agree with the district court and hold that under present Indiana law, the United States was under no obligation to file a 1968 financing statement in order to perfect the security interest.

Our holding gains support from recent developments in pertinent U.C.C. sections. Since the adoption of the U.C.C. by the State of Indiana,[5] which was in effect at times pertinent to this case, the American Law Institute and the National Conference of Commissioners on Uniform State Laws have given their attention to the official text of the U.C.C. A comprehensive revision of Article IX of the U.C.C. has resulted. The revisions have been published recently as the "1972 Official Text and Comments of Article 9—Secured Transactions." [6] Since the promulgation of these comprehensive revisions to Article IX, most states, including Indiana, have had little or no time to amend their statutes. Nevertheless we are aided in our decision by these revisions and by the official comments on the issue before us.

The most significant revision for our purposes is to be found in § 9–204 which, inter alia, permits and regulates the right of a secured party to acquire a security interest in crops. The section, before revision, as adopted by Indiana and discussed, supra, provided that no security interest could attach in crops which became such more than one year after the security agreement was

---

4. It is significant to note that the provisions of the U.C.C. make a distinction between the attaching of a security interest and its perfection. The concept of "attaching" refers to the creation of the security interest by virtue of the execution of a security agreement, while "perfection" is the additional step which makes the security interest effective against third parties by virtue of filing a financing statement.

5. The U.C.C. was adopted by Indiana in 1963 and became effective on July 1, 1964.

6. The revisions were originally drafted and recommended by the U.C.C.'s permanent Editorial Board and in 1971 approved and in 1972 published by the American Law Institute and the National Conference of Commissioners on Uniform State Laws.

executed.[7] This section was designed to protect against farmers who would encumber their crops for many years in the future and was in substantial conformity with the Indiana Chattel Mortgage Law which the U.C.C. replaced. The revised § 9–204, however, no longer restricts a security interest from attaching to crops which become such more than one year after the execution of the security agreement but rather has eliminated that provision.[8] In articulating reasons for the changes, the commentators state that the former § 9–204(2) and (4)(a), applying to crops, were unworkable and confusing. Therefore, in the revision, section (2) was "eliminated as unnecessary" and (4)(a) was redesigned and numbered (2). In explaining the problems with the former section the commentators expressed reasons applicable to the issue before us. There-

fore, we find the following explanation by the commentators of the change in former § 9–204(4)(a) persuasive in support of our determination of the case before us:

The provision did not work because there was no corresponding limit on the scope of a financing statement covering crops, and under the Code's notice-filing rules the priority position of a security arrangement covering successive crops would be as effectively protected by the filing of a first financing statement whether the granting clause as to successive crops was in one security agreement with an after-acquired property clause or in a succession of security agreements. On the other hand the clause did require an annual security agreement for crops even when the encumbrance on crops was agreed to as part of a

---

7. U.C.C. § 9–204, Burns Ind.Stats. 19–9–.204. When Security Interest Attaches; After-Acquired Property; Future Advances.

(1) A security interest cannot attach until there is agreement (subsection (3) of Section 1–201) that it attach and value is given and the debtor has rights in the collateral. It attaches as soon as all of the events in the preceding sentence have taken place unless explicit agreement postpones the time of attaching.

(2) For the purposes of this section the debtor has no rights

(a) in crops until they are planted or otherwise become growing crops, in the young of livestock until they are conceived;

(b) in fish until caught, in oil, gas or minerals until they are extracted, in timber until it is cut;

(c) in a contract right until the contract has been made;

(d) in an account until it comes into existence.

(3) Except as provided in subsection (4) a security agreement may provide that collateral, whenever acquired, shall secure all obligations covered by the security agreement.

(4) No security interest attaches under an after-acquired property clause

(a) to crops which become such more than one year after the security agreement is executed except that a security interest in crops which is given in conjunction with a lease or a land purchase

or improvement transaction evidenced by a contract, a mortgage or deed of trust may if so agreed attach to crops to be grown on the land concerned during the period of such real estate transaction;

(b) to consumer goods other than accessions (Section 9–314) when given as additional security unless the debtor acquires rights in them within ten days after the secured party gives value.

(5) Obligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment.

8. Revised § 9–204 provides:

(1) *Except as provided in subsection (2), a security agreement may provide that any or all obligations covered by the security agreement are to be secured by after-acquired collateral.*

(2) *No security interest attaches under an after-acquired property clause to consumer goods other than accessions (Section 9–314) when given as additional security unless the debtor acquires rights in them within ten days after the secured party gives value.*

(3) (5) Obligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment *(subsection (1) of Section 9–105).*

Italicized portions indicates new language.

long-term financing covering farm machinery and other assets. The provision thus appeared to be meaningless in operation except to cause unnecessary paperwork, but it did introduce some element of uncertainty as to its purpose.

For the foregoing reasons the judgment of the district court is

Affirmed.