**In the Matter of Max Eldon ELLIS and Judy Kay Ellis, Debtors.**

**Hugh A. MINER, Trustee in Bankruptcy, Plaintiff,**

**v.**

**FARMERS HOME ADMINISTRATION, (COMMODITY CREDIT CORPORATION) and Gentry County Bank, Defendants.**

Bankruptcy No. 84–03769–SJ.
Adv. No. 85–0111–SJ.

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

Dec. 19, 1985.

Hugh A. Miner, St. Joseph, Mo., for plaintiff.

David DeTar Newbert, Kansas City, Mo., for Farmers Home Admin. and Commodity Credit Corp.

Fred Kling, Albany, Mo., for Gentry County Bank.

Mark Stingley, St. Joseph, Mo., for debtors.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT FOR FARMERS HOME ADMINISTRATION

DENNIS J. STEWART, Bankruptcy Judge.

The trustee in bankruptcy sues for turnover of certain monies allegedly due the bankruptcy estate. He seeks to exercise his avoiding powers under the "strong arm" clause, § 544(a) of the Bankruptcy Code, to avoid the security interest of the Farmers Home Administration which he contends is not perfected. The parties to the action submitted the following stipulation on July 3, 1985.

"COMES NOW United States Attorney for the Western District of Missouri, by David DeTar Newbert, representing Farmers Home Administration and Commodity Credit Corporation, and Fred Kling, representing Gentry County Bank, Albany, Missouri, and Hugh A. Miner, trustee of the above bankruptcy, and stipulate as follows:

"WHEREAS, trustee has in his possession nineteen checks, several checks, several of which are multiple payee checks and WHEREAS the parties involved have overlapping and various interests in the proceeds of said checks, IT IS HEREBY STIPULATED AND AGREED as follows:

"1. The check in the amount of $26,343 is to be paid to the Farmers Home Administration.

"2. The check in the amount of $8,883.41 is to be divided: $5,405.22 to the Gentry County Bank for sixteen cows and $3,478.19 to the Farmers Home Administration.

"3. The check in the amount of $2,164.10 is to be divided: $1,310.01 to the Gentry County Bank for nine sows; $854.09 to the Farmers Home Administration for eight pigs and six sows.

"4. The check for $2,211.70 is to go to the Farmers Home Administration.

"5. The check for $1,956.00 is to go to the Farmers Home administration.

"6. The check for $2,397.00 is to be divided: $2,004.73 to the Gentry County Bank for fifteen sows; $392.27 to the Farmers Home administration.

"7. The check for $3,418.10 is to go to the Farmers Home Administration for thirty hogs.

"8. The check for $745.11 is for 1984 soybeans and is claimed by Farmers Home Administration.

"9. The check for $1,412.19 is for 1984 yellow corn and is claimed by the Farmers Home Administration.

"10. The check for $1,297.52 is for 1984 yellow corn and is claimed by the Farmers Home Administration.

"11. The check for $1,379.72 is for 1984 yellow corn and is claimed by the Farmers Home Administration.

"12. The check for $1,378.61 is for 1984 yellow corn and is claimed by the Farmers Home Administration.

"13. The check for $1,003.15 is for 1984 soybeans and is claimed by the Farmers Home Administration.

"14. The check for $1,570.35 is for 1984 corn. Commodity Credit Corporation, through its counsel, the United States Attorney's office, asserts no claim to this check, indicating it as a claim only on bins. The proceeds are claimed by Farmers Home Administration.

"15. The check for $972.04 is for grain and is claimed by the Farmers Home Administration.

"16. The check for $877.30 is for grain and is claimed by the Farmers Home Administration.

"17. The check for $1,598.40 is for damaged grain and is claimed by the Farmers Home Administration.

"18. The check for $14,473.89 is for 1984 corn and is claimed by the Farmers Home Administration.

"19. The check for $2,747.21 is for 1984 soybeans and is claimed by the Farmers Home Administration.

"20. Checks No. 8 through 19, all represent 1984 soybeans and corn claimed to be secured by the Farmers Home Administration. The trustee challenges the perfection of the security interest. The parties agree to submit the issue of perfection to the bankruptcy Judge upon a stipulation of facts and briefs; with the brief of trustee to be first submitted 15 days after the entry of the order.

"21. From the proceeds at hand, the Farmers Home Administration is to be paid the sum of $38,653.35 by check drawn upon the trustee's account, payable to the Department of Justice for the Farmers Home Administration.

"22. The Gentry County Bank is to be paid the sum of $8,719.96 and the sum

of $29,455.49 is the disputed proceeds mentioned above upon the issue of perfection.

"It is respectfully submitted that an Order of the Court be entered upon the above stipulation."

The court, in response to the above quoted stipulation, on September 23, 1985, entered its order to the following effect:

"If the foregoing is all there is to the stipulation of facts which is presented to the court as a basis for decision, it provides a wholly insufficient basis for the court's determination of the perfection issue. It neither states nor shows directly or indirectly, the facts relating to the perfection issue, i.e., the date of execution of any security agreement, its contents, the balance due to the Farmers Home Administration after subtraction of all legitimate credits, including those mentioned in the above and foregoing, *inter alia.*

"This court must either accordingly reconvene the hearing of the merits of this action which it previously sought to convene on June 3, 1985, and which was not held because of the fiat of plaintiff, who orally informed the court that a dispositive stipulation would be filed or else the court could make the decision in this action on the basis of the facts which appear to be undisputed in the briefs of the parties. The difficulty with the latter course is that the court can find no definitive and undisputed statement in the briefs concerning the correct balance due the Farmers Home Administration after all proper credits have been given to the debtors."

Thereafter, on October 7, 1985, a subsequent stipulation of the parties was filed which reflects the following:

"COME NOW the parties, Hugh Miner, Trustee, and the United States of America, on behalf of its agencies, the Farmers Home Administration (FmHA) and the Commodity Credit Corporation (CCC), by counsel, and state as follows pursuant to the dispute between the parties:

"That the date of filing with respect to financing statements, security agreements, etc., are as set forth in the briefs of the parties;

"That the debtors owed FmHA the sum of $451,022 as of the date of filing their bankruptcy petition; and

"That the estimated balance on the debtors' account, due and owing FmHA *after* the credits for (a) collections made to date $63,814.98), and (b) FmHA's equity in real estate ($172,065.64) is $215,142.15."

The stipulation thus filed does not give the court a great deal more information than did the former—and wholly uninformative—stipulation. It was apparently incumbent upon the court to extract the necessary and material information by addressing an explicit and particularized written interrogatory to each general and specific issue which might conceivably be joined under the claims and defenses in the pleadings.

Nevertheless, the parties have been offered an opportunity for a full hearing and have declined that opportunity and have submitted the action for decision on the basis of the pleadings, their stipulations of fact, and the files and records of the court. Thus, the court can ascertain by adding the figures on the copies of the checks attached to the complaint that the total of those proceeds is the sum of $71,200.20—a total which is substantially less than the balance of $215,142.15 stipulated to be owed by the debtors to the Farmers Home Administration. The answer of that defendant establishes its contention that this balance due it was "secured by a security interest covering agricultural chattels and crops that was perfected by a financing statement filed March 24, 1981, in the Gentry County, Missouri, record's office" and that the "most recent security agreement [was] dated October 18, 1984." That security agreement, as relevant, purports to grant the defendant Farmers Home Administration a security interest in:

"All crops, annual and perennial, and other plant products, growing or grown,

or which are hereafter planted or otherwise become growing crops or other plant products (a) within the one-year period or any longer period of years permissible under state law, or (b) at any time hereafter if no fix maximum period is prescribed by state law, on ... described real estate."

No issue is made that the proceeds which are the subject of controversy are not derived from crops grown on the real estate described in the security agreement. In a similar view, the financing statement describes the collateral as follows:

"Crops covered hereby are growing or are to be grown on ... [certain described real estate]."

Subsequent to the filings of the financing statement and the making of the latest security agreement, the debtors filed their petition for voluntary bankruptcy on December 4, 1984.

These facts adumbrate the legal issue of whether it is necessary in order to perfect a security interest in growing crops, to file a new financing statement each season, just as it is necessary to execute a new security agreement in each new growing crop. If it is necessary to file a new financing statement with each new growing season, the security interest of the defendant Farmers Home Administration is not perfected with respect to the proceeds sought to be reclaimed by it. If however, the usual five-year prospective effectiveness of a financing statement, see § 400.9–403(2) RSMo,[1] is applicable then the Farmers Home Administration must prevail and obtain recovery of the proceeds now *sub judice.*

No authoritative Missouri decision on this issue is cited by the parties in their respective briefs. The apparent reliance of the trustee is upon § 400.9–204(4) RSMo which provides as follows:

"(4) No security interest attaches under an after-acquired property clause

(a) to crops which become such more than one year after the security agreement is executed except that a security interest in crops which is given in conjunction with a lease or land purchase or improvement transaction evidenced by a contract, mortgage or deed of trust may if so agreed attach to crops to be grown on the land concerned during the period of such real estate transaction." [?]

Although, however, there appears to be no Missouri state court decisions interpreting this statute, a number of decisions made under the law of other states hold that this section does not mean that a new financing statement must be filed each time a new security interest is entered into; that each financing statement has a five-year prospective life under section 9–403(2) of the Uniform Commercial Code; and that, therefore, the limitation imposed by section 400.-9–204(4), *supra,* would end a year after the making of a security agreement which was preceded by the filing of a financing statement with the six-year period next preceding the date on which the crops were first growing. *United States v. Minster Farmers Coop. Ex., Inc.,* 430 F.Supp. 566, 570 (N.D.Ohio 1977). ("This section cannot fairly be read to require the filing of a new financing statement for every crop year. By its plain language the section requires only the execution of a new security agreement ...."); *United States v. Riceland Foods, Inc.,* 504 F.Supp. 1258, 1262 (E.D. Ark.1981) ("Crops growing or to be grown on the subject real property would be subject to the security interest of the plaintiff for five years commencing on the date the financing statement was filed."). And see

---

1. "A filed financing statement which states a maturity date of the obligation secured of five years or less is effective until such maturity date and thereafter for a period of sixty days. Any other filed financing statement is effective for a period of five years from the date of filing. The effectiveness of a filed financing statement lapses on the expiration of such sixty-day period after a stated maturity date or on the expiration of such five-year period, as the case may be, unless a continuation statement is filed prior to the lapse. Upon such lapse the security interest becomes unperfected. A filed financing statement which states that the obligation secured is payable on demand is effective for five years from the date of filing."

*United States v. Gleaners and Farmers Cooperative Elevator Co.,* 481 F.2d 104, 106 (7th Cir.1973), to the following effect:

"Gleaners' argument, that there was not a perfected security interest in the 1968 crops as a result of the failure to file a financing statement in 1968, ignores two sections of the U.C.C. which provide (1) that '[a] financing statement may be filed before a security agreement is made or a security interest otherwise attaches,' Burns Ind.Stats. § 19–9–402; and (2) that the filing of a financing statement is effective for a period of five years unless a shorter period is otherwise stated, Burns Ind.Stats. § 19–9–403, IC 1971, 26–1–9–403. Applying these sections to the facts before us, the April 13, 1967 filing of a financing statement was sufficient to satisfy the requirement necessary to perfect a secruity interest under the March 21, 1968 security agreement."

These decisions appear squarely applicable under the Missouri version of the Uniform Commercial Code which contains the same provision for five-year prospective application of a financing statement as was explicated in the above decisions. See section 400.9–403(2) RSMo. The law is thus clear that the Farmers Home Administration has a valid and perfected security interest in the proceeds of the growing crops. It is therefore

ORDERED, ADJUDGED AND DECREED that the plaintiff's within complaint be, and it is hereby, denied. The trustee should accordingly turn the proceeds of crops over to the Farmers Home Administration.