The CITIZENS NATIONAL BANK OF EVANSVILLE, Appellant/Cross Appellee (Plaintiff Below),

v.

Raymond WEDEL, Jr., Appellee/Cross Appellant (Defendant Below).

No. 4–784A181.

Court of Appeals of Indiana, Fourth District.

March 10, 1986.

George Montgomery, Terry G. Farmer, Bamberger, Foreman, Oswald & Hahn, Evansville, for appellant/cross appellee.

Donald R. Wright, W. Scott Shrode, Lynn, Wright, Evans & Daly, Evansville, for appellee/cross appellant.

MILLER, Judge.

In this replevin action, a dispute between plaintiff-appellant Citizens National Bank of Evansville and defendant-appellee Raymond Wedel, Jr. involved competing property interests in a boat and trailer owned by The Post, Inc. The bank claimed it had a perfected security interest in the boat, while Wedel asserted his contract rights to the boat were superior to the bank because its security interest was not perfected. Specifically, he claimed: 1) the financing statement filed by the bank incorrectly listed the debtor as Post, Inc. instead of its correct name, The Post, Inc.; and 2) the boat in question was listed as new when it was a used boat. After a jury trial, the trial court entered judgment for Wedel, and both parties have appealed. We re-verse because the bank's security was perfected, and its claim to the collateral was superior to Wedel's contractual claim.

FACTS

Raymond Wedel, Jr. was a partner in Osborn Boats & Motors, an Indiana partnership. The partnership sold its assets on April 20, 1979 to The Post, Inc., a corporation in the business of selling motors, boats, and trailers. Under the terms of the agreement, Wedel was to receive $10,000 or a boat of equal value on August 1, 1979 in addition to monthly payments.

On May 31, 1979, The Post entered into a security agreement with the bank, granting it a security interest in certain inventory. The security agreement listed as collateral the inventory owned by The Post as described in the trust receipts. The trust receipts, in turn, listed a 1979 Ambassador 26-foot boat, serial number AQ290A594A, and a yellow 1979 Roadrunner trailer, serial number RR28191.

The bank filed a financing statement with the Indiana Secretary of State on June 12, 1979. The statement described the collateral as "new boats—all types of trailers, new jet boats—contract and lease rights for assigned security agreement dated May 31, 1979." Moreover, the debtor on the financing statement was listed as "Post, Inc. d/b/a/ Osborn Boats & Motors."

In February of 1980, The Post defaulted on its obligations to the bank, and it was several months behind in its monthly payments to Wedel. Moreover, Wedel had not received either the $10,000 payment or a boat from The Post. As a result of the default, the bank took over The Post's inventory.

Meanwhile, Wedel attempted to discover from the bank what security interest it might have in the inventory of The Post. On March 6, 1980, Wedel requested the Secretary of State to search for any financing statements on any property of The Post, Inc. The response by the Secretary on March 10, 1980 was that it could not find any statements on file.

On May 30, 1980, Wedel told the chief executive officer of The Post he intended to

exercise his contract rights to purchase a boat. He then peacefully removed the 1979 yellow Ambassador 26-foot boat from The Post's place of business. On June 13, 1980, the bank filed a replevin action against Wedel after unsuccessfully demanding that Wedel return the boat, and the trial court granted a prejudgment order of possession to the bank.

Wedel responded to the bank's complaint by denying the validity of the claim and by asserting an affirmative defense of lack of good faith on the part of the bank, estopping it from any claim of right, title, or interest to the boat or the trailer in question. Wedel also entered a counterclaim alleging he was entitled to possession of the boat pursuant to his contract with The Post, and the bank had converted his property in the replevin action. The jury returned a verdict in favor of Wedel on his counterclaim, awarding him $10,000 in compensatory damages by reason of the conversion of the property by the bank, and the court entered judgment against the bank in that amount.

Both the bank and Wedel appeal the judgment, collectively raising the following issues for our consideration:

(1) Whether the bank had a perfected security interest in the boat;

(2) Whether the damages awarded were excessive;

(3) Whether the trial court should have instructed the jury on the issue of punitive damages;

(4) Whether the punitive damages instruction was a correct statement of the law.

We address only the first issue—whether the bank had a perfected security interest in the boat.[1]

We reverse.

1. We do not address the punitive damages issues because compensatory damages are a necessary prerequisite to an award of punitive damages. *Skinner v. Martin* (1983), Ind.App., 455 N.E.2d 1168. In holding that the bank had a perfected security interest in the boat and thus was entitled to its possession, there was no conversion of the boat by the bank and Wedel

## DECISION

The creation of a perfected security interest in personal property is accomplished in a two step process: attachment and perfection. IND.CODE 26–1–9–303.[2] Attachment occurs once "there is an agreement ... that it attach and value is given and the debtor has rights in the collateral." IND. CODE 26–1–9–204(1) (1982) (current version at IND.CODE 26–1–9–203(1) (Supp. 1985)). Once the three requirements of attachment are met, the security interest is enforceable as between the secured party and the debtor. *Hillman's Equipment, Inc. v. Central Realty, Inc.* (1968), 144 Ind.App. 18, 242 N.E.2d 522, *rev'd on other grounds*, (1969) 253 Ind. 48, 246 N.E.2d 383.

The three elements of attachment—an agreement, value given, and debtor rights in the collateral—are not disputed by the parties. The May 31, 1979 security agreement and the trust receipt together satisfy the requirement that there be an agreement. Moreover, the trust receipt indicates value was given in exchange for the security interest in the form of a loan. The final requirement, that the debtor have rights in the collateral, is satisfied by Wedel's testimony that The Post owned the boat and trailer at the time it granted a security interest to the bank. Thus, the bank's security interest in the boat was enforceable as between it and The Post as debtor once attachment occurred.

While "attachment" relates to the creation of a security interest by virtue of execution of a security agreement, "perfection" is an additional step which makes the security interest effective against third parties. *U.S. v. Gleaners & Farmers Co-*

was not entitled to any compensation and thus, no punitive damages.

2. This code section provides, in pertinent part, "A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken." I.C. 26–1–9–303.

*operative Elevator Co.* (7th Cir.1973), 481 F.2d 104. Perfection of a security interest is generally accomplished in one of two manners: by possession of the collateral or by filing a financing statement.[3] IND. CODE 26–1–9–304, –305 (1982). In order to perfect a security interest in Indiana by filing when the collateral is inventory, such as the boat in question,[4] the proper place to file the financing statement is with the office of the Secretary of State. IND. CODE 26–1–9–401(1)(c) (1982). The bank filed such a financing statement on June 12, 1979, and it claims perfection of its security interest in the boat under this filing.

Wedel challenges the validity of the perfected security interest on two grounds. He first asserts the financing statement is ineffective because the debtor's name was erroneously listed on the financing statement as "Post, Inc. d/b/a Osborn Boats & Motors" instead of "The Post, Inc." He argues the missing "The" invalidates the statement because the statute requires the correct name of the debtor to appear on the financing statement. IND. CODE 26–1–9–402(1), (3)(1982).

The standard for determining whether an error in the financing statement invalidates an otherwise perfected security interest is set forth in I.C. 26–1–9–402(5)(1982) which provides, "A financing statement substantially complying with the requirements of this section is effective even though it con-tains minor errors which are not seriously misleading." Wedel contends the omitted article "The" is seriously misleading because financing statements are indexed alphabetically under the name of the debtor[5] so that statement in question would not be filed in the correct place. Wedel supports his argument by the fact the office of Secretary of State did not find any financing statements on file when he requested a search under the name of "The Post, Inc." as the debtor.

▬ We note at the outset the question of whether the error in the debtor's name is a minor one and is not seriously misleading is one of law for the court to decide and not a question of fact.[6] *John Deer Co. v. William C. Pahl Construction Co.* (1970), 34 App.Div.2d 85, 310 N.Y.S.2d 945. Moreover, the test of the sufficiency of a financing statement is whether, under all the facts, the filing would have given a file searcher notice to justify placing a duty upon him to make further inquiry concerning the possible security interest. *In re Excel Stores, Inc.* (2d Cir.1965), 341 F.2d 961; *In re Reeco Electric Co., Inc.* (S.D. Me.1976), 415 F.Supp. 238; *In re Colorado Mercantile Co.* (D.Colo.1969) 299 F.Supp. 55; Uniform Commercial Code Sec. 9–402, comment 2. Essentially, all that is required of the creditor is to file something publicly that will alert credit searchers to the existence of a security agreement. J.

---

**3.** In some cases, a security interest may be temporarily perfected without filing a financing statement or transferring possession of the collateral. *See, e.g.,* I.C. 26–1–9–304(4) (Supp.1985) (21 day automatic perfection for security interest in instruments or negotiable instruments).

**4.** Goods are considered inventory if they are "held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, or if they are raw materials, work in process or materials used or consumed in a business. Inventory of a person is not to be classified as his equipment." IND.CODE 26–1–9–109(4).

**5.** IND.CODE 26–1–9–403(4)(1982).

**6.** There was direct evidence in the form of testimony and printed guidelines that even if the bank had listed the debtor as The Post, Inc., the Secretary of State's office would have disregarded the article "The" and alphabetized the financing statement under Post, Inc. The Secretary of State's printed filing procedures for the Uniform Commercial Code specifically state, "Disregard articles and apostrophes and &. ex:—The Lounge—file in L's." Record, p. 836. There was also evidence that the financing statement was filed under Post, Inc. and it should have been discovered by a routine search. On the other hand, Wedel presented a document supplied to him by the Secretary of State that it had no record of the financing statement, and there was hearsay testimony that the Secretary of State used articles at the beginning of corporation names when alphabetizing. As noted above, we consider this a question of law and we find it unnecessary to consider this conflicting testimony.

White & R. Summers, *Handbook of the Law Under The Uniform Commercial Code* Sec. 23–16 at 952 (2d ed. 1980).

■ We hold the omission of an article such as "The" from the beginning of the debtor's name is a minor error which is not seriously misleading. We judicially note that initial articles—"A", "An", and "The" —are commonly omitted when titles are organized alphabetically.[7] We are aware of no system of alphabetizing—for reference, indexing, or filing—which would attempt to organize titles by an initial article, and cannot fathom a system which would attempt to do so. Thus, a filing that omits the initial article of a corporation name fulfills the test of a minor error which is not seriously misleading because such a filing should alert searches to the existence of a security agreement. In other words, it provided sufficient notice to warrant imposing an obligation upon him to inquire further concerning possible security interests.

■ Furthermore, we believe such a filing is sufficient despite Wedel's contention that under the practices of the office of the Secretary of State, interested parties are not allowed to inspect the files themselves but are required to rely on the employees of the Secretary of State to report on the "exact name" submitted for the search, and, as in the case at hand, such a search was not conducted in a thorough manner so as to disclose the statement. *Reeco, supra,* 415 F.Supp. at 242. Filing officer errors are normally not charged to the secured creditor whose financing statement is misfiled or not filed at all. *In re Electrotype Corp.* (D.Miss.1977), 438 F.Supp. 1143; *In re Tri Cities Music Centers, Inc.* (E.D.Tenn.1977), 22 U.C.C.Rep.Serv. 254. Our court has held that the proper remedy for a creditor when a code filing officer overlooks a filed financing statement in responding to a properly framed search

request is against the officer. *Salem Bank & Trust Co. v. Whitcomb* (1977), 173 Ind.App. 183, 362 N.E.2d 1180.

Finally, we note one of the stated policies of I.C. 26–1–9–402 is "to simplify formal requisites and filing requirements and is designed to discourage the fanatical and impossibly refined reading of such statutory requirements in which courts have occasionally indulged themselves." West's AIC 26–1–9–402 (1980), comment 5. The effect of a contrary conclusion would be to read section 9–402(5) out of the code and would be the sort of "fanatical and impossibly refined reading" which the drafters sought to avoid and which virtually all courts interpreting this section of the code have rejected. *See, e.g., Excel Stores, supra* (debtor listed as Excel Department Stores instead of Excel Stores, Inc.); *In re Southern Supply Co.* (E.D.N.C.1975) 405 F.Supp. 20 (debtor recorded as Southern Supply Co. rather than Southern Supply Company of Greenville, N.C., Inc.); *In re Nara Non Food Distributing, Inc.* (1970), 66 Misc.2d 779, 322 N.Y.S.2d 194, *aff'd,* 36 App.Div.2d 796, 320 N.Y.S.2d 1014 (debtor indexed as Nara Dist. Inc. instead of Nara Non Food Distributing Inc.); *Sales Finance Corp. v. McDermott Appliance Co., Inc.* (1960), 340 Mass. 493, 165 N.E.2d 119 (debtor recorded as McDermott Appliance Co., Inc. rather than McDermott Appliance Company, Inc.; applying pre-code law but citing U.C.C. as in accord).[8]

Wedel's second challenge to the validity of the bank's perfected security interest concerns the description of the collateral in the financing statement. The statement describes the collateral as "new boats—all types of trailers, new jet boats." Wedel argues the financing statement would not alert a creditor of any security interest in the 1979 Ambassador boat because it was used and not new. Thus, he reasons the

---

7. *See, e.g.,* American Library Association, *Anglo-American Cataloging Rules* (2d ed. 1978).

8. Even if the financing statement were seriously misleading because it omitted the word "The" from the debtor's name, the record indicates the bank perfected its security interest in the boat before Wedel seized it because the bank was in possession of the boat at the time of seizure, and possession is an alternative method of perfecting a security interest in inventory. *See* text accompanying note 3 *supra.*

financing statement is ineffective to perfect the bank's security interest in the 1979 Ambassador boat.

The statute addressing the contents of a financing statement states it must contain "a statement indicating the types, or describing the items, of collateral...." I.C. 26–1–9–402(1)(1982). Although the parties do not challenge the validity of the underlying security agreement, we note one of the requirements for making a written security interest enforceable against the debtor or third parties is also that it must contain a description of the collateral. IND. CODE 26–1–9–203(1)(1982). Moreover, the code illuminates the description requirements of the financing statement and written security interest by stating, "For the purpose of this Article any description of personal property ... is sufficient whether or not it is specific if it reasonably identifies what is described." IND. CODE 26–1–9–110.

Although I.C. 26–1–9–110 applies to both financing statements and security interests, the collateral description requirement for financing statements is somewhat less demanding than the requirement for security agreements. The financing statement statute requires only a description "indicating the types" of collateral, while the security interest statute states the security agreement must contain "a description of the collateral," a more demanding test. This is so because the function of the financing statement is only to provide enough notice so that other creditors will make further inquiry to determine the nature and extent of security interests in the debtor's collateral. West's AIC 26–1–9–402(1980), comment 5. The purpose of the description of the security interest, however, is to minimize "the possibility of future dispute as to the terms of a security agreement and as to what property stands as collateral for the obligation secured." West's AIC 26–1–9–203 (1980), comment 3.

■ In light of the purpose of the collateral description in a financing statement—to provide enough notice for further inquiry—we note the adequacy of the description in the financing statement is a

question of law. *In re Katz* (5th Cir.1977), 563 F.2d 766. Our court has addressed this issue before, stating:

" '[T]he test of sufficiency of a description is that the description do the job assigned to it—that it make possible the identification of the things described. And, under this Rule, courts should refuse to follow the holding, often found in the old chattel mortgage cases, that descriptions are insufficient unless they are of the most exact and detailed nature, the so-called "serial number" test. It necessarily follows that under the Uniform Commercial Code great liberality is afforded in determining the sufficiency of the description of collateral. This view seems to have unanimous support in the reported cases relating to the issue. The test seems to be that if the description of the collateral is sufficient to direct inquiry on the part of the party examining it the requirements of the UCC as to constructive notice have been met.' "

*Cargill, Inc. v. Perlich* (1981), Ind.App., 418 N.E.2d 274, 280 (quoting *In re Malzac* (D.C.Vt.1974), 14 U.C.C.Rep.Serv. 1223, 1226). The question, then, is whether the financing statement describing the collateral as "new boats" rendered it possible to identify the 1979 Ambassador boat.

■ Although Wedel argues repeatedly in his brief that the 1979 Ambassador boat was used and not new, the record indicates a substantial amount of evidence was presented by both sides as to whether it was new or used. We believe this heated debate at trial and on appeal indicates the status of the boat was questionable enough so that the financing statement covering new boats was sufficient, as a matter of law, to direct further inquiry by Wedel to determine whether the 1979 Ambassador boat was included as collateral, especially because the financing statement was filed in 1979, the same year as the model of the boat in question. An opposite result would require a secured party to have to update the status of the collateral after every new model is introduced, and this would contra-

vene the inquiry notice which is the purpose of the collateral description in the financing statement.[9]

Reversed and remanded for entry of judgment in favor of the bank, and any damages it is entitled to for the replevin action.

YOUNG, P.J., concurs.

CONOVER, J., concurs in result.

---

**9.** We note that filed financing statements are effective as a general rule for five years. *See* IND. CODE 26–1–9–403(2) (Supp.1985).