FIFTH THIRD BANK, Appellant–
Plaintiff,

v.

COMARK, INC., Appellee–Defendant,

Comark, Inc., Appellee–Plaintiff,

v.

Vertica Solutions, LLC, Fifth Third Bank, One Call Communications, Inc., and Switch & Data in One, Inc., Appellant–Defendant.

No. 49A02–0211–CV–921.

Court of Appeals of Indiana.

July 23, 2003.

David J. Jurkiewicz, Feiwell & Hannoy, Indianapolis, IN, Attorney for Appellant.

Robert D. MacGill, Amy H. Joliet, Barnes & Thornburg, Charleyne L. Gabriel, Kunz & Opperman, Indianapolis, IN, Attorneys for Appellees.

## OPINION

SHARPNACK, Judge.

Fifth Third Bank ("Fifth Third") appeals the trial court's grant of summary judgment to Comark, Inc., ("Comark"), denial of summary judgment to Fifth Third, and denial of Fifth Third's motion to correct error.[1] Fifth Third raises two issues, which we restate as:

I. Whether the trial court erred by finding that Comark had a security interest in collateral owned by Vertica Solutions, LLC; and

II. Whether the trial court erred by finding that Fifth Third, as a creditor of Vertica Solutions, Inc., had no security interest in the collateral owned by Vertica Solutions, LLC.

We affirm.

The relevant facts designated by the parties follow. Vertica Solutions, LLC ("Vertica, LLC") was organized in October 1999. Christopher Heath is a principal and founding member of Vertica, LLC. Heath also incorporated Vertica Solutions, Inc., ("Vertica, Inc.") "as a vehicle to receive venture capital." Appellant's Appendix at 289. Vertica, Inc., never operated as a business, held any assets, issued any stock, or held a meeting of board members or shareholders.

In July 2000, Vertica, LLC, purchased computer products from Comark for $2,800,000.00. Vertica, LLC, granted a security interest to Comark. The Comark security agreement identified the collateral as:

inventory consisting of all computers and perifierials (sic) including but not limited to: CPU's, monitors, cables, modems, hard and floppy drives, random access memory, keyboards, mice, power cords and components of every kind, nature and description bearing the tradename or distributed by "COMARK

---

1. We direct Fifth Third's attention to Ind.App. Rule 46(A)(10) which requires an appellant's brief to "include any written opinion, memorandum of decision or findings of fact and conclusions thereon relating to the issues raised on appeal."

INC" or "PC WHOLESALE" together with all accessories thereto, now in Debtor's possession or hereafter acquired by Debtor, all additions and accession thereto, substitutions therefore and all inventory of like kind hereafter acquired by Debtor, as well as all proceeds from the sale or any other disposition of such inventory, which inventory together with such additions, accessions, and substitutions thereof as there may be. . . .

*Id.* at 125. Comark filed a UCC 1 financing statement with the Indiana Secretary of State in August 2000. The financing statement provided that:

Debtor HEREBY GRANTS to the secured party a PURCHASE MONEY SECURITY INTEREST in all its inventory, now in [Debtor's] possession or hereafter acquired consisting of all computer products of every kind, nature and description bearing the tradename or purchased from Comark, Inc. and including all proceeds from the sale or any other disposition of the collateral.

*Id.* at 341.

In November 2000, Fifth Third loaned $250,000.00 to Vertica, Inc. In making the loan, Fifth Third met with Brian Joseph Locke and Tyrone Owens to discuss the business strategy of Vertica, Inc., visited the offices of Vertica, LLC, and reviewed computer equipment located in the offices. According to a website designated as simply "Vertica Solutions" without a corporate designation, Owens was the technology leader of "Vertica Solutions." Owens's business card identified him as the president and chief technology officer of "Vertica Solutions." Locke signed the promisso-

ry note and security agreement as CEO of Vertica, Inc. However, Locke was never a CEO, shareholder, or officer of Vertica, Inc., and Vertica, Inc., "never granted Locke the authority to enter into an agreement on behalf of" Vertica, Inc. *Id.* at 290.

Fifth Third filed a UCC 1 financing statement regarding its security interest with the Indiana Secretary of State in November 2000. The financing statement covered:

All inventory, chattel paper, accounts, equipment, general intangibles, securities, investment properties and financial assets; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds).

*Id.* at 279. In January 2001, Fifth Third requested that the Indiana Secretary of State perform a UCC search for Vertica, Inc., which revealed Comark's UCC filing against Vertica, LLC, Fifth Third's UCC filing against Vertica, Inc., and a UCC filing against Vertica, Inc., by Unisys Corporation ("Unisys").[2]

After Vertica, Inc., defaulted on the loan, Fifth Third filed a complaint against Vertica, Inc., Locke, Owens, Comark, and Unisys. Fifth Third obtained a default judgment against Vertica, Inc., entered into an agreed judgment with Locke, and obtained summary judgment against Owens. Comark filed a motion for summary judgment alleging, in part, that Fifth Third had a security interest in nonexis-

---

2. Unisys filed a UCC financing statement in July 2000 against Vertica, Inc., which covered "[a]ll computer products, other equipment, and related items, sold, transferred, or delivered to Debtor by Secured Party, now or in the future, together with all accessions, accessories, additions, and attachments thereto, and all substitutions therefore, and all cash and non-cash proceeds of any of the foregoing." Appellant's Appendix at 339.

tent collateral owned by Vertica, Inc., rather than collateral owned by Vertica, LLC, being held by Comark. Thus, Comark alleged that it was entitled to summary judgment on Fifth Third's claim to Vertica, LLC's collateral. Fifth Third filed a cross-motion for summary judgment against Comark alleging, in part, that Comark's security agreement and UCC filing were ineffective because they described the collateral as "inventory" rather than "equipment" and Vertica, LLC, had no "inventory." *Id.* at 325–326. Fifth Third further alleged that it had a proper security interest in the collateral owned by Vertica, LLC.

The trial court entered findings of fact and conclusions thereon granting Comark's motion for summary judgment and denying Fifth Third's motion for summary judgment. The trial court found, in part, that:

### I. Findings of Fact

\* \* \* \* \*

3. [Vertica, LLC,] granted Comark a security interest in the computer products which it purchased from Comark.

4. The computer products were equipment, not inventory, of [Vertica, LLC]

5. [Vertica, LLC,] did not have any inventory.

6. Comark filed a UCC–1 Financing Statement on August 24, 2000 which named [Vertica, LLC,] and describes an interest in "inventory" of [Vertica, LLC,] "consisting of all computer products of every kind, nature and description bearing the tradename or purchased from Comark, Inc."

\* \* \* \* \*

11. [Fifth Third] filed a UCC–1 Financing Statement concerning its security agreement with [Vertica, Inc.,] on November 20, 2000, which identified a security interest in "all inventory, chattel, paper, accounts, equipment, general intangibles . . . of debtor [Vertica, Inc.]"

12. [Vertica, Inc.] had no "inventory, chattel, paper, accounts, equipment, general intangibles. . . ."

13. There is no designated evidence that the Bank had a security agreement or an UCC–1 Financing Statement relating to any property of [Vertica, LLC]. . . . Thus, this Court finds that [Fifth Third] does not have a security interest in the computer products purchased by [Vertica, LLC,] from Comark, Inc. in July 2000.

\* \* \* \* \*

### II. Conclusions of Law

\* \* \* \* \*

3. It is a court's duty to interpret a contract to ascertain the intent of the parties. *McLinden v. Coco,* 765 N.E.2d 606, 611 (Ind.Ct.App. 2002). The terms of the Purchase Money Security Agreement . . . reflect that [Vertica, LLC,] intended that Comark take a security interest in the computer equipment which Comark sold to [Vertica, LLC,] even though the equipment was designated as "inventory."

4. The purpose of a financing statement is to alert third parties to the existence of a security interest in property held by a debtor. "Essentially, all that is required of the creditor is to file something publicly that will alert credit searchers to

the existence of a security agreement." *Citizens Nat'l Bank of Evansville v. Wedel,* 489 N.E.2d 1203, 1206 (Ind.Ct.App.1986).

5. Ind.Code § 26–1–9–400 et seq. establish the procedures for providing notice of a security interest. These provisions direct the creditor to file its financing statement with a central office, the Secretary of State, accessible to any person interested in whether property has been secured. Ind.Code § 26–1–9–401.

6. The statute also sets forth formal requirements for the creditor to follow in drawing up the financing statement. Ind.Code § 26–1–9–402. The test of the sufficiency of a financing statement is whether, under all the facts, the filing would have given a file searcher notice to justify placing a duty upon him to make further inquiry concerning the possible security interest. *Wedel,* 489 N.E.2d at 1205. See also *Chrysler Credit Corp. v. Knebel Chevrolet–Buick, Inc.,* 976 F.2d 1012 (7th Cir.1992); *Cargill, Inc. v. Perlich,* 418 N.E.2d 274, 280 (Ind.Ct.App.1981).

7. Under Indiana law (which adopts the UCC), a sufficient description of collateral is any description which reasonably identifies what is described, whether or not it is specific. Ind.Code § 26–1–9–110.

8. In *In re Torgerson Co.,* 114 B.R. 899 (Bkrtcy.W.D.Tex.1990), the court found that misidentification of collateral as "equipment" rather than "inventory" on a financing statement was not a fatal error. Using the same standard applicable under Indiana law, the court held that the description of the collateral at issue, "though not perfect, was sufficient to put an ordinarily prudent person on notice of the security interest." 114 B.R. at 903.

9. Comark's description of the collateral at issue, while not perfect, was sufficient to put an ordinarily prudent person on notice of its security interest in the computers purchased by [Vertica, LLC.]

10. Comark has a valid security interest in the collateral at issue (computer products purchased by [Vertica, LLC] from Comark in July 2000 for $2,800,000) and has priority over any other claim against that collateral.

*Id.* at 18–23. Fifth Third filed a motion to correct error, which was deemed denied pursuant to Ind. Trial Rule 53.3.

Our standard of review for a trial court's grant of a motion for summary judgment is well settled. On appeal, the standard of review of a grant or denial of a motion for summary judgment is the same as that used in the trial court: summary judgment is appropriate only where the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Corr v. Am. Family Ins.,* 767 N.E.2d 535, 537–538 (Ind.2002). The moving party must designate sufficient evidence to eliminate any genuine factual issues, and once the moving party has done so, the burden shifts to the nonmoving party to come forth with contrary evidence. *Shambaugh & Son, Inc. v. Carlisle,* 763 N.E.2d 459, 460–461 (Ind.2002). The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts against the moving party. *Id.* The fact that the parties made cross-motions for summary judgment does not alter our standard of

review. *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind.Ct. App.1997), *trans. denied.* Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

When a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, as it did here, the method of our review is not changed. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

## I.

The first issue is whether the trial court erred by finding that Comark had a security interest in collateral owned by Vertica, LLC. Specifically, the trial court found that Comark had a valid security interest in the collateral and had priority over any other claim against that collateral. Fifth Third argues that Comark did not have a security interest in the collateral because the Comark security agreement and UCC financing statement identified the collateral as "inventory" when the collateral was, in fact, "equipment." Comark does not dispute the fact that the security agreement and UCC financing statement mistakenly identified the collateral as inventory rather than equipment.[3] However, Comark argues that the description of the collateral was sufficient to put an ordinarily prudent person on notice of its security interest.

■ Initially, we note that this case is governed by Ind.Code § 26–1–9–101 to –507, which was the Uniform Commercial Code—Secured Transactions Act in effect at the time of these transactions. Ind. Code § 26–1–9–101 to –507 was repealed by Pub.L. No. 57–2000, § 45, effective July 1, 2001. The revised Uniform Commercial Code—Secured Transactions Act is now found at Ind.Code § 26–1–9.1–101 to –709. The Secured Transactions Act in effect at the time of these transactions discussed both the attachment and the perfection of security interests. "While 'attachment' relates to the creation of a security interest by virtue of execution of a security agreement, 'perfection' is an additional step which makes the security interest effective against third parties." *Citizens Nat'l Bank of Evansville v. Wedel*, 489 N.E.2d 1203, 1205 (Ind.Ct.App.1986). According to Fifth Third, Comark failed to obtain either "attachment" or "perfection" of its security interest because of its mistaken description of the collateral as inventory rather than equipment. We note that "the collateral description requirement for financing statements is somewhat less demanding than the requirement for security agreements. The financing statement statute requires only a description 'indicating the types' of collateral, while the security interest statute states the security agreement must contain 'a description of the collateral,' a more demanding test."

---

**3.** Ind.Code § 26–1–9–109(2) defined "equipment" as goods "used or bought for use primarily in business (including farming or a profession) or by a debtor who is a nonprofit organization or a governmental subdivision or agency or if the goods are not included in the definition of inventory, farm products or consumer goods." Ind.Code § 26–1–9–109(4) defined "inventory" as goods:

held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, or if they are raw materials, work in process or materials used or consumed in a business. Inventory of a person is not to be classified as his equipment.

*Wedel,* 489 N.E.2d at 1208. Because of the differing tests, we separately analyze whether Comark achieved "attachment" and "perfection."

### A. Attachment of Comark's Security Interest

■ We first address whether Comark obtained "attachment" through its security agreement. Ind.Code § 26–1–9–203 provided that three requirements must be met for a security interest to be enforceable and attach: (1) the collateral must be "in the possession of the secured party pursuant to agreement, or the debtor [must sign] a security agreement which contains a description of the collateral . . . ;" (2) value must be given; and (3) the debtor must have rights in the collateral. The parties do not dispute that Vertica, LLC, had rights in the collateral or that value was given. Rather, Fifth Third argues that the security agreement did not contain an adequate description of the collateral.

Ind.Code § 26–1–9–110 provided that "any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." The purpose of the description of the security interest is to minimize "the possibility of future dispute as to the terms of a security agreement and as to what property stands as collateral for the obligation secured." *Wedel,* 489 N.E.2d at 1208 (quoting Ind.Code § 26–1–9–203, comment 3). Thus, we must determine whether the Comark security agreement contained a "description of the collateral" that "reasonably identifie[d] what is described." I.C. §§ 26–1–9–203, –110.

The Comark security agreement identified the collateral as:

> inventory consisting of all computers and perifierials (sic) including but not limited to: CPU's, monitors, cables, modems, hard and floppy drives, random access memory, keyboards, mice, power cords and components of every kind, nature and description bearing the tradename or distributed by "COMARK INC" or "PC WHOLESALE" together with all accessories thereto, now in Debtor's possession or hereafter acquired by Debtor, all additions and accession thereto, substitutions therefore and all inventory of like kind hereafter acquired by Debtor, as well as all proceeds from the sale or any other disposition of such inventory, which inventory together with such additions, accessions, and substitutions thereof as there may be. . . .

*Id.* at 125. It is undisputed that the collateral was incorrectly described as inventory rather than equipment. However, the trial court found that:

> It is a court's duty to interpret a contract to ascertain the intent of the parties. *McLinden v. Coco,* 765 N.E.2d 606, 611 (Ind.Ct.App.2002). The terms of the Purchase Money Security Agreement . . . reflect that [Vertica, LLC,] intended that Comark take a security interest in the computer equipment which Comark sold to [Vertica, LLC,] even though the equipment was designated as "inventory."

Appellant's Appendix at 21. We agree.

■ "In interpreting a written contract the court will attempt to determine the intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties." *First Fed. Sav. Bank of Ind. v. Key Mkts., Inc.,* 559 N.E.2d 600, 603 (Ind. 1990). Although the parties mistakenly used the term "inventory" rather than "equipment," the remainder of the language describing the collateral clearly indicates that the parties intended to use the computer products bearing the name or

distributed by Comark or PC Wholesale as collateral. We conclude that the security agreement reasonably identified the collateral. The description of the security interest was adequate to fulfill its purpose of minimizing future disputes as to the terms of the security agreement and identifying the collateral. Consequently, Comark attached its security interest to the collateral.

### B. Perfection of Comark's Security Interest

■ We next address whether Comark perfected its security interest. Perfection of a security interest is generally accomplished in one of two ways: (1) by possession of the collateral pursuant to Ind.Code § 26–1–9–305; or (2) by filing a financing statement pursuant to Ind.Code § 26–1–9–401. *Wedel,* 489 N.E.2d at 1206. The parties do not dispute that perfection by the filing of a financing statement is applicable here. Rather, Fifth Third argues that Comark's security interest was not perfected because the collateral was incorrectly identified on the financing statement as inventory rather than equipment.

Ind.Code § 26–1–9–402(1) provided that a financing statement was sufficient if it contained:

(a) The debtor's legal name and address;

(b) The name and address of the secured party from which information concerning the security interest may be obtained;

(c) A statement indicating the types of describing the items of collateral; and

(d) The debtor's signature.

Further, Ind.Code § 26–1–9–402(7) provided that "[a] financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." According to the Uniform Commercial Code comments to the statute, this subsection "is in line with the policy of this Article to simplify formal requisites and filing requirements and is designed to discourage the fanatical and impossibly refined reading of such statutory requirements in which courts have occasionally indulged themselves." I.C. § 26–1–9–402, comment 9.

We interpreted Ind.Code § 26–1–9–402 in *Wedel,* 489 N.E.2d at 1206. There, we held that the question of whether an error in the financing statement "is a minor one and is not seriously misleading is one of law for the court to decide and not a question of fact." *Id.* Additionally, "the test of the sufficiency of a financing statement is whether, under all the facts, the filing would have given a file searcher notice to justify placing a duty upon him to make further inquiry concerning the possible security interest." *Id.* Essentially, "all that is required of the creditor is to file something publicly that will alert credit searchers to the existence of a security agreement." *Id.* The function of the financing statement is only to provide enough notice so that other creditors will make further inquiry to determine the nature and extent of security interests in the debtor's collateral. *Id.* (citing Ind.Code § 26–1–9–402, comment 5).

Moreover, in *Cargill, Inc. v. Perlich,* we held that:

the test of sufficiency of a description is that the description do the job assigned to it that it make possible the identification of the things described. And, under this Rule, courts should refuse to follow the holding, often found in the old chattel mortgage cases, that descriptions are insufficient unless they are of the most exact and detailed nature, the so-called 'serial number' test. It necessarily fol-

lows that under the Uniform Commercial Code great liberality is afforded in determining the sufficiency of the description of collateral. This view seems to have unanimous support in the reported cases relating to the issue. The test seems to be that if the description of the collateral is sufficient to direct inquiry on the part of the party examining it the requirements of the UCC as to constructive notice have been met.

418 N.E.2d 274, 280 (Ind.Ct.App.1981) (citations omitted).

Thus, the issue is whether Comark's description of the collateral made it possible to identify the collateral and put others on notice that a security agreement existed. Here, the Comark financing statement provided that:

> Debtor HEREBY GRANTS to the secured party a PURCHASE MONEY SECURITY INTEREST in all its inventory, now in Debtors possession or hereafter acquired consisting of all computer products of every kind, nature and description bearing the tradename or purchased from Comark, Inc. and including all proceeds from the sale or any other disposition of the collateral.

Appellant's Appendix at 341. The trial court, citing *In re Torgerson Co.*, 114 B.R. 899 (Bankr.W.D.Tex.1990), found that "Comark's description of the collateral at issue, while not perfect, was sufficient to put an ordinarily prudent person on notice of its security interest in the computers purchased by [Vertica, LLC.]" *Id.* at 22. We agree.

In *Torgerson*, a secured creditor incorrectly identified collateral as "equipment" rather than "inventory" on a financing statement. 114 B.R. at 902–903. Despite this error in identifying the collateral, the bankruptcy court held that "[a] reasonably prudent person, after reading the UCC–1 description, would inquire as to the extent of the security interest identified in the UCC–1 financing statement if he had plans to finance or purchase a Coyote loader of Torgerson's." *Id.* at 903. The court noted that regardless of whether the collateral was classified as inventory or equipment, the UCC–1 financing statements for both types of goods would be located in the same file in the secretary of state's office. *Id.* Further, the description "[e]quipment manufactured by Coyote Loader Sales, Inc." reasonably described the collateral. *Id.* Thus, "[t]he description of the collateral, though not perfect, was sufficient to put an ordinarily prudent person on notice of the security interest." *Id.*

Similarly, here, the description of the collateral was sufficient to alert Fifth Third to the existence of a security agreement. Although it describes the collateral as inventory rather than equipment, the agreement specifically identified the collateral as computer products bearing the Comark name or purchased from Comark. The description in the financing statement was sufficient to put a searcher on notice that a security agreement existed and made it possible to identify the collateral. *See, e.g., Wedel*, 489 N.E.2d at 1208–1209 (holding that the description of collateral in a financing statement was sufficient). Consequently, Comark perfected its security interest in the collateral.

In summary, the trial court found that "Comark has a valid security interest in the collateral at issue . . . and has priority over any other claim against that collateral." Appellant's Appendix at 22. We agree. Because Comark attached and perfected its security interest, Comark had a security interest in Vertica, LLC's computer equipment identified in the security agreement. No genuine issues of material fact exist, and Comark was entitled to judgment as a matter of law. Consequent-

ly, the trial court did not err by granting summary judgment to Comark.

## II.

█ The next issue is whether the trial court erred by finding that Fifth Third, as a creditor of Vertica, Inc., had no security interest in the collateral owned by Vertica, LLC. The trial court found that, although Fifth Third filed a financing statement regarding its security interest in Vertica, Inc.'s "inventory, chattel paper, accounts, equipment, general intangibles, securities, investment properties and financial assets," Vertica, Inc., possessed no such assets. Further, the trial court found that:

There is no designated evidence that the Bank had a security agreement or an UCC 1 Financing Statement relating to any property of [Vertica, LLC]. . . . Thus, this Court finds that [Fifth Third] does not have a security interest in the computer products purchased by [Vertica, LLC,] from Comark, Inc. in July 2000.

Appellant's Appendix at 20.

Fifth Third argues that Vertica, Inc., had rights to Vertica, LLC's Comark computer products. Under Ind.Code § 26–1–9–203(1)(c), a security interest is not enforceable and does not attach unless the "debtor has rights in the collateral." Fifth Third points out that "rights in the collateral" does not necessarily mean "title" to the collateral. *See* Ind.Code § 26–1–9–202 ("Each provision of IC 26–1–9 with regard to rights, obligations, and remedies applies whether title to collateral is in the secured party or in the debtor."). Fifth Third argues that Vertica, LLC, allowed Vertica, Inc., to appear as the owner of the Comark computer products. Specifically, Fifth Third argues that Vertica, LLC, permitted Owens "access to the [Vertica, LLC,] facility and equipment so that Fifth Third was [led] into dealing with the apparent owner,

[Vertica, Inc.]." Appellant's Reply Brief at 8. Fifth Third argues that Vertica, LLC, did not "control the use of its name" and often "held itself out as" Vertica Solutions without a corporate designation. Appellant's Brief at 9. Thus, according to Fifth Third, Vertica, LLC, is "estopped from asserting that Fifth Third does not have rights in the Primary Collateral." *Id.* Comark responds that Fifth Third designated no genuine issues of material fact to support its arguments.

Fifth Third relies upon *In re Pubs, Inc. of Champaign,* 618 F.2d 432 (7th Cir.1980), and *In re Standard Foundry Prod., Inc.,* 206 B.R. 475 (N.D.Ill.1997), *reconsideration denied by* 208 B.R. 164 (Bankr. N.D.Ill.1997). In *Pubs,* Hein and Richardson, two directors, officers, and sole shareholders of a corporation, agreed to purchase restaurant equipment. *Id.* at 435. Hein executed a promissory note and granted a security interest in restaurant equipment to the Bank. *Id.* Hein and Richardson then sold the collateral to Pubs subject to the security interest. *Id.* Richardson did not sign the promissory note until after the collateral was transferred. *Id.* Pubs later filed for bankruptcy protection, and the trustee argued that a security interest did not attach because Richardson no longer had "rights in the collateral" when he signed the promissory note. *Id.* at 435–436.

The Seventh Circuit held that "the requirement that there be 'rights in the collateral' illustrates the general principle that 'one cannot encumber another man's property in the absence of consent, estoppel or some other special rule.'" *Id.* at 436. Estoppel was at issue in the case, and the Seventh Circuit noted that the doctrine of estoppel "is based upon the conduct of the true owner, whereby he has allowed another to appear as the owner, or as having full power of disposition over the

property, so that an innocent person is led into dealing with such apparent owner." *Id.* at 437. The court concluded that Pubs had notice of the security interest and was "chargeable with the knowledge of its officers and directors." *Id.* at 438. Thus, "Pubs was estopped to deny the Bank's security interest and this estoppel gave Hein and Richardson 'rights in the collateral' within the meaning of [§ ] 9–203 so the Bank's security interest attached to the collateral and was enforceable against Hein, Richardson, Pubs, and other parties, including the trustee." *Id.*

In *Standard Foundry Products*, the company used certain equipment as collateral for a loan. 206 B.R. at 478. However, the principals' son owned the equipment. *Id.* at 477. The son was a former officer of the company. *Id.* The son argued that he allowed his parents to use his equipment but did not authorize them to pledge the equipment as collateral. *Id.* The Bank argued that the son was "estopped from denying that the assets were encumbered because he allowed the [company] to appear as the owner of the property and consented to the pledge of the disputed equipment to the Bank by the [company] as collateral for the loan." *Id.*

The bankruptcy court noted that "rights in the collateral" has generally been recognized to include: (1) the debtor has possession and title to the goods; (2) the true owner consents to the debtor's use of the collateral as security; or (3) the true owner is estopped from denying the creation of the security interest. *Id.* at 479. The court found that the son consented to the company's use and possession of the equipment, which created the appearance of

ownership of the equipment in the company. *Id.* at 480. Thus, the company had "rights in the collateral." *Id.* However, in determining whether the son was estopped from asserting his ownership, the court found that the record was devoid of any evidence that the Bank was somehow misled by the son's silence into believing his items of equipment were actually owned by the company. *Id.* at 481. Consequently, the court entered judgment for the son.[4] *Id.*

Here, no evidence was designated demonstrating that Vertica, LLC, "consented" to Vertica, Inc., encumbering its property. Further, no evidence was designated demonstrating that Vertica, Inc., was in possession of the equipment. As for estoppel, our supreme court has held that estoppel exists "if one party through his course of conduct knowingly misleads or induces another party to believe and act upon his conduct in good faith without knowledge of the facts." *Levin v. Levin*, 645 N.E.2d 601, 604 (Ind.1994). No evidence was designated demonstrating that Vertica, LLC, knowingly misled or induced Fifth Third. In fact, no evidence was designated that Vertica, LLC, permitted Vertica, Inc., to appear as the owner of the computer products or that Vertica, LLC, had notice of the security interest established by Vertica, Inc. Rather, the designated evidence demonstrated that Locke, who signed the security agreement as CEO of Vertica, Inc., was never a CEO, shareholder, or officer of Vertica, Inc., and Vertica, Inc., "never granted Locke the authority to enter into an agreement on behalf of" Vertica, Inc. Appellant's Appendix at 290.

---

**4.** We disagree with Fifth Third's assertion that the court in *Standard Foundry Products* "held that the relative was estoppeled (sic) from denying that the assets were encumbered because the relative allowed the debtor to appear as the owner of the property."

Appellant's Brief at 9. Rather, the court clearly found that the son was not estopped from asserting his ownership and granted judgment in favor of the son. *Standard Foundry Prod.*, 206 B.R. at 481.

Consequently, no evidence was designated demonstrating that Vertica, Inc., had "rights in the collateral" owned by Vertica, LLC. The trial court did not err by finding that, under the designated evidence, Fifth Third did not have a security interest in the computer products purchased by Vertica, LLC. Consequently, the trial court did not err by denying Fifth Third's motion for summary judgment because Fifth Third was not entitled to judgment as a matter of law.

For the foregoing reasons, we affirm the trial court's grant of Comark's motion for summary judgment and the trial court's denial of Fifth Third's motion for summary judgment.

Affirmed.

BARNES, J., and RILEY, J., concur.