FIRST AGRI SERVICES, INC., Plaintiff-
Appellant,

v.

Gary KAHL and Dale Kahl, d/b/a Kahl Farms,
a partnership, Defendants-Respondents,

BANK OF NEW GLARUS, Badgerland
Harvestore Systems, Inc., John Deere Company,
United Bank in Sun Prairie, Mt. Horeb Farmers
Cooperative, Production Credit Association,
Susan Kahl, Intervenors-Respondents.

Court of Appeals

*No. 84–2084. Submitted on briefs November 11, 1985.—
Decided February 24, 1986.*
(Also reported in 385 N.W.2d 191.)

465

For the plaintiff-appellant the cause was submitted on the briefs of *Scott F. Shadel* and *Nowlan & Mouat* of Janesville.

For the Intervenor-Respondent, Production Credit Association, the cause was submitted on the brief of *Jack Aulik* and *Aulik, Brill & Eustice, S.C.* of Sun Prairie.

Before Dykman, Eich and LaRocque, J.J.

DYKMAN, J.   First Agri Services, Inc. appeals from an order directing payment of the proceeds of a liquidation of farm assets to a competing secured creditor, Production Credit Association. The issue is whether PCA's initial security interest remained per-

fected as to assets acquired after the individual debtors shown on its financing statement began doing business as a partnership under a trade name. The trial court concluded it did. Because we conclude that PCA's financing statement became "seriously misleading" within the meaning of sec. 409.402(7), Stats.,[1] after the change, that filing was insufficient to perfect an interest in property acquired by the business more than four months after the partnership was formed. We therefore reverse.

## FACTS

Gary and Dale Kahl initially financed their dairy farming operations with PCA as co-signing individual debtors. PCA's financing statements were filed in Dane county and list Gary Kahl and Dale Kahl as debtors. Gary and Dale and their father (now deceased) later formed a partnership named Kahl Farms. All of their individual farm assets were transferred to the partnership. PCA did not refile a financing statement under

---

[1] Section 409.402(7), Stats., provides:

A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names or the names of partners. Where the debtor so changes his name or in the case of an organization its name, identity or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than 4 months after the change, unless a new appropriate financing statement is filed before the expiration of that time. A filed financing statement remains effective with respect to collateral transferred by the debtor with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer.

"Kahl Farms." It made further loans to the business, continuing to list Dale and Gary Kahl as debtors on its financing statements.

First Agri and the Mt. Horeb Co-op also extended credit to the partnership. Each filed financing statements listing the debtor as Kahl Farms.[2]

First Agri began this case as a replevin action. It sought possession of the farm assets in which it held a security interest. When judgment was entered in favor of First Agri, Kahl Farms filed a petition in bankruptcy under Chapter 11. That proceeding was ultimately dismissed and a receiver was appointed to marshal and liquidate the partnership's assets.

Several secured creditors claimed an interest in the liquidation proceeds. PCA moved for an order directing disbursement of the proceeds to it by virtue of its senior filing. Mt. Horeb Co-op and First Agri objected, arguing that PCA's security interest was senior only to those assets originally acquired by Dale and Gary Kahl individually and transferred to the Kahl Farms partnership. The trial court ruled that PCA's filing was sufficient to perfect its interest in all partnership assets and ordered that it be paid first from the sale proceeds.[3] First Agri appeals from that order.[4]

---

[2] The Kahl Farm's mailing address shown on First Agri's financing statements was the same as that shown for Gary and Dale Kahl on PCA's financing statement. The First Agri statements also bore the signatures of Gary and Dale Kahl.

[3] Because of this ruling, no determination was made as to when the partnership was formed and which assets were acquired after that date.

[4] Gary and Dale Kahl d/b/a Kahl Farms, and Receiver Justice Burgweger are the named respondents. The partnership's other creditors, Bank of New Glarus, Badgerland Harvestore Systems, Inc., John Deere Company, United Bank in Sun Prairie, Mt. Horeb

The ultimate question is whether PCA's security interest extended to assets acquired after the date of its security agreement by the Kahl Farms partnership. PCA's security agreement identifies three categories of farm assets in which an interest is claimed: "2. LIVE-STOCK . . . 3. FARM MACHINERY AND EQUIP-MENT . . . 4. OTHER PERSONAL PROPERTY, IN-CLUDING FEED AND GRAIN TO BE SOLD. . . ." The statements go on to claim an interest in

> [a]ll property similar to that described under Items 2, 3, and 4 above, which at any time may hereafter be acquired by the Debtor including, but not limited to, additions and replacements and progeny of live-stock and animals and poultry and replacements of and additions to equipment and other personal property above described.

We conclude that this language is sufficient to extend PCA's security interest to Gary and Dale Kahl's after-acquired farm assets. First Agri has made no claim against such property.

Section 409.402(7), Stats., provides in part that "[a] filed financing statement *remains effective with respect to collateral transferred by the debtor* even though the secured party knows of or consents to the transfer." (Emphasis added.) The parties agree that PCA's first position interest continued in the collateral trans-ferred by the individual Kahls to the partnership.

---

Farmers Co-op, Production Credit Association, and Susan Kahl, were joined as intervenor-respondents.

However, sec. 409.402(7), Stats., also grants a creditor a four month grace period in which to refile its financing statement after a debtor's change of name or organizational identity. A perfected interest in assets acquired by the successor after four months is cut off if there is no refiling and the result is "seriously misleading" to subsequent creditors. Thus the issue in dispute here is whether PCA's original filings are sufficient to retain a perfected interest in property acquired by Kahl Farms more than four months after its formation.[5]

---

[5] The parties cite two cases from other jurisdictions which are factually very similar to the case at hand: *In Re Taylorville Eisner Agency, Inc.,* 445 F.Supp. 665 (S.D. Ill 1977), and *Citizens Sav. Bank v. Sac City State Bank,* 315 N.W.2d 20 (Iowa 1982). Despite the similarity of facts, we decline to adopt the reasoning of either.

The *Taylorville Eisner* court suggests that "collateral" transferred under the third sentence of UCC sec. 9–402(7) retains any after-acquired property "obligation" under which it was originally secured. *Id.* at 669. Under this reasoning, any property acquired by the transferee at any time after the initial transfer is "infected" with perfection under the financing statement listing the transferor as debtor. We reject this reading of sec. 9–402(7) because it ignores the four month limitation of sec. 9–402's second sentence and unreasonably burdens a potential creditor with a duty to inquire as to the source of title of *all* the transferee's assets.

The *Sac City* court concluded that a successor debtor "cannot be viewed as 'the debtor' as that reference appears for the second time in the second sentence in subsection 554.9402(7) [Iowa stats.]." *Id.* at 27. This reasoning assumes two debtors though factually there is only one. The reasoning is therefore fundamentally flawed.

First Agri contends that a reasonable record search under "Kahl Farms" would not disclose PCA's claimed interest in the collateral owned by the partnership.

Section 409.402(7), Stats., provides in part that a filed financing statement may remain sufficient after the debtor changes its "name, identity, or corporate structure . . ." if the change does not render that statement "seriously misleading." The question, therefore, is whether PCA's financing statements listing the debtors as Gary and Dale Kahl would seriously mislead a creditor of Kahl Farms.[6]

Whether a filing is "seriously misleading" is a mixed question of fact and law. First, there must be findings as to what the financing statement contained and where and when it was filed. These facts must then be applied to the statutory standard of "seriously misleading." Here the material facts are undisputed. The application of the statute to a given set of facts is a question of law. *Midwest Developers v. Goma Corp.*, 121 Wis.2d 632, 651, 360 N.W.2d 554, 564 (Ct.App. 1984). We decide questions of law without deference to the

---

[6] First Agri does not contend that it was actually misled by the debtors' change of name. It cites several ninth circuit cases for the proposition that a conclusion that a financing statement is "seriously misleading" does not require a finding that a creditor had actually been misled. *In Re Thomas, Inc.*, 466 F.2d 51 (9th Cir. 1972); *In Re Pacific Trencher & Equipment, Inc.*, 735 F.2d 362 (9th Cir. 1984). Respondents suggest that this is not a case of a name change, but is rather a change in identity of the debtor. This distinction appears immaterial under the language of sec. 409.402(7), Stats.

trial court. *Ball v. District No. 4, Area Board,* 117 Wis.2d 529, 537, 345 N.W.2d 389, 394 (1984).

First Agri argues that, because PCA's financing statements nowhere contain the name Kahl Farms, they are "seriously misleading" and insufficient to perfect an interest in assets subsequently acquired by the partnership. Respondents counter by citing sec. 409.402(8), Stats., which provides: "A financing statement substantially complying with the requirements of this section is effective *even though it contains minor errors which are not seriously misleading.*" (Emphasis added.)

The notice filing system was adopted to create a simple system to provide reliable basic information to third persons without unduly burdening secured creditors. A financing statement failing to convey the information which a reasonably diligent third person requires to identify potential competing security interests in the debtor's assets is "seriously misleading."

Because the secured party is required to file an accurate financing statement, the Uniform Commercial Code properly provides that an incorrect financing statement is insufficient unless the error is minor and not misleading. We do not believe that charging creditors with the responsibility of preserving their security interests through proper filing—and, where necessary—refiling, is an unreasonable burden.[7]

---

[7] In other contexts, a security interest properly perfected at one time may later become unperfected through creditor inaction. *See, e.g.* sec. 409.103(1)(d)1, (2)(b), (3)(e), Stats. (four month grace periods preserving perfection in collateral removed from jurisdic-

Variations in the debtor's listed name are of particular concern, because that name is the key to the indexing upon which the entire notice system relies. Therefore, a post-filing change of the debtor's name, identity, or both, not reflected in the records via refiling holds the potential for misleading third persons and creating an unenforceable "secret lien."

The extent and character of the change is, of course, significant. However, we should not resort to hypertechnicality. Comment 9 to U.C.C. sec. 9–402(8), 3A U.L.A. 54 (1981), from which sec. 409.402(8), Stats., is drawn, provides:

> Subsection (8) is in line with the policy of this Article to simplify formal requisite and filing requirements and is designed to discourage the fanatical and impossibly refined reading of such statutory requirements in which courts have occasionally indulged themselves. As an example of the sort of reasoning *which this subsection rejects,* see *General Motors Acceptance Corporation v. Haley,* 329 Mass. 559, 109 N.E.2d 143 (1952). (Emphasis added.)

In that case, the court held that a filing listing the debtor as "E.R. Millen Company" was insufficient to perfect a security interest in property of E.R. Millen, Co., Inc. It is this rejection of overly strict application of the filing provisions which has resulted in holdings such as that in *Matter of Southern Sup. Co. of Greenville, N.C., Inc.,* 405 F.Supp. 20 (E.D.N.C. 1975) ("Southern Supply Co." adequately identifying Southern Supply Company of Greenville, N.C., Inc.); *Matter of Reeco*

tion); sec. 409.403(2) (lapse of financing statements after 5 years unless continued).

*Elec. Co., Inc.,* 415 F. Supp. 238 (D. Me., S.D. 1976) ("Reeco Electric" and "Petersbuilt, Inc." sufficient to identify Reeco Electric Co., Inc. and Petersbuilt Incorporated, respectively); and *Matter of Clairmont Pharmacy, Inc.,* 8 B.R. 695 (Bankr. N.D. Ga. 1981) ("Clairmont Skyland Pharmacy, Inc." adequately identified Clairmont Pharmacy, Inc.).

However, we should not permit excessive latitude in the accuracy required of a proper filing. The reasoning of cases such as *In Re Platt,* 257 F. Supp. 478 (E.D. Pa. 1966) (holding a filing under "Platt Fur Co." sufficient notice of an interest in the business assets of Henry Platt); and *In Re Hatfield Construction Co.,* 10 U.C.C. Rep. Serv. 907 (Bankr. M.D. Ga. 1971) (holding a filing under "Hatfield, Wayne L." sufficient to perfect an interest in the assets of a corporation called Hatfield Construction Company); has been criticized.

For example, in *Citizens Bank v. Ansley,* 467 F.Supp 51 (M.D. Ga.), *aff'd,* 604 F.2d 669 (1979), the court called the *Platt* line of cases "bad precedent," noting that:

> *Platt* promotes careless filing, thereby undermining the very purpose of the filing requirement, notice. *Platt* invites deceptive practices. Furthermore, *Platt* not only assumes that prospective creditors, no matter how unsophisticated, will discover an index card for a similar trade name but also assumes that they will connect the business entity listed with the individual they are investigating. These assumptions place a heavy burden on prospective creditors although the Code contemplates that those seeking to perfect security interests bear

the burden of properly filing. Burden shifting of this sort is for the legislature, not the courts.[8]

*Id.* at 55.

Similarly, the court in *In Re Brawn,* 7 U.C.C. Rep. Serv. 565 (D.C. Me. 1970), also disapproved of *Platt* and like cases as "virtual license [to] approach . . . carelessly the simple responsibility of preparing the *skeletal financing statements upon which the quality of the entire notice-giving function of the Code filing system depends."* (Emphasis in original. Footnote omitted.) *Id.* at 576.

We join these criticisms of the *Platt* line of reasoning. We conclude that sec. 409.402(7), Stats., contemplates imposing the burden of maintaining a proper fil-

---

[8] Interestingly, the *Ansley* court held that a filing under "the name Ansley Farms instead of the debtor's true name—Emory Ansley—is seriously misleading, making [the] . . . security interest unperfected . . . ." *Id.,* 467 F.Supp. at 55. Other cases reaching similar results are *In Re Wishart,* 10 U.C.C. Rep. Serv. 1296 (Bankr. W.D. Mich. 1972) (holding a filing under "Wishart Equipment Co." insufficient to identify the debtor, Horace Wishart); *In Re Brawn,* 7 U.C.C. Rep. Serv. 565 (D.C. Me. 1970) (holding "Brawn's Super Market" an insufficient listing where the debtor was Wendall P. Brawn); *In Re McCauley's Reprographics, Inc.,* 638 F.2d 117 (9th Cir. 1981) (holding a filing under "McCauley's Reprographics and Mapping" insufficient to perfect a security interest in the assets of the debtor corporation); and *Matter of Lintz West Side Lumber, Inc.,* 655 F.2d 786 (7th Cir. 1981) (holding a filing under "John and Mayella Lintz" insufficient to identify the debtor corporation). (Several of these cases predate the 1972 adoption of U.C.C. sec. 9–402(7) and sec. 409.402(7), Stats., or deal with filing errors rather than changes in debtor identification. Nonetheless, we believe their reasoning remains applicable to our determination whether a notice filing is "seriously misleading.")

ing upon the creditor who seeks to preserve security.

The *Hatfield* court observed that "[n]otice filing eliminates pernicketiness but does not eliminate certainty. So the key to perfection . . . is notice and to accomplish that the financing statement must give the name of the debtor. . . . The law will not have accomplished anything if in eliminating refined reading there is substituted guess and surmise." (Citations omitted.) *In Re Hatfield,* 10 U.C.C. Rep. Serv. at 910. That court, however, chose to make its holding a narrow one; limiting it to the facts of the case. It concluded that the filing, though not listing the name of the actual debtor, was not seriously misleading because "Wilkinson County is not a large body of people. . . . [and t]he index would not deal with great numbers of financing statements compared to an index for a large community." (Footnote omitted.) *Id.* at 912. Dane county's U.C.C. filings are segregated as to individual and organizational debtors. The number of filings in each category is very large. *Hatfield* does not persuade us to adopt an expansive view of substantial compliance here.

A search of the records under "Kahl Farms" would reveal none of PCA's financing statements. There is no showing that a third person searching solely under "Kahl Farms" would be put on notice that further inquiry is required. We decline to impose a duty to identify all partners of a debtor partnership and to search for competing liens under each of those names.[9]

---

[9] It would be possible for a potential creditor to locate PCA's financing statement by means of a thorough search of both Dane county's organizational and individual files. Nevertheless, there is nothing in the proper indexing of "Kahl Farms" which would rea-

We conclude that PCA's failure to file new financing statements identifying "Kahl Farms" as the debtor rendered its statements on file seriously misleading. Therefore, under sec. 409.402(7), Stats., PCA's security interest extends only to the collateral originally transferred to the partnership by the individual debtors and those assets acquired within four months after the partnership was formed. We reverse and remand, directing the court to determine the date on which the business became known as Kahl Farms; the identity of all assets acquired within four months of that change, and of all assets transferred to Kahl Farms by the individual debtors; and to apportion and order disbursement of the liquidation proceeds in a manner consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.

sonably prompt such a search. To nevertheless burden a potential creditor with a duty to make an unprompted general inquiry would frustrate the intent of the statute to create a simple and clear notice filing system.