**CHEMICAL BANK, a New York banking corporation, Plaintiff,**

v.

**TITLE SERVICES, INC., Defendant.**

Civ. No. 3–87–0600.

United States District Court,
D. Minnesota,
Third Division.

March 14, 1989.

John F. Beukema, Faegre & Benson, Minneapolis, Minn., for plaintiff.

Ronald L. Haskvitz, Smith, Juster, Feikema, Malmon & Haskvitz, Chartered, Minneapolis, Minn., for defendant.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

This matter is before the court on defendant's motion for summary judgment. The defendant, Title Services, Inc. ("TSI") seeks judgment in its favor on the grounds that the plaintiff's claims of breach of warranty and negligence are not supported in law. For the reasons stated below, the court holds that TSI is entitled to judgment as a matter of law. Accordingly, TSI's motion for summary judgment is granted.

Diversity jurisdiction is proper over this matter. Minnesota law governs.

### FACTS

In December 1985, the plaintiff, Chemical Bank agreed to lend $3,560,000 to Mears Park Central Limited Partnership ("Central"), the developer of Galtier Plaza. The parties contemplated that a portion of the loan proceeds would go to cover certain obligations incurred by Fitzgerald's of St. Paul, Inc., a tenant in Galtier Plaza. In

accordance with the terms of the loan agreements and as a condition of releasing funds to Central which in turn would be loaned to Fitzgerald's, Fitzgerald's executed a security agreement granting Chemical a security interest in certain collateral including restaurant equipment and other property. In the agreement, Fitzgerald's represented that it was the owner of the collateral and held it free of any lien. Chemical admits it has no other documents evidencing that Fitzgerald's had a legal or equitable interest in the collateral.

Prior to entering into the loan commitment with Central, Chemical received from Central the results of U.C.C. searches which purported to reveal all lien filings as of November 13, 1985 against a number of entities. The only search relevant to this case involved the Boisclair Corporation. Central engaged TSI to conduct the searches. As was the practice at the time, TSI submitted a U.C.C. Form 11 to the Secretary of State identifying Boisclair as one of the debtors to be searched. The Secretary of State conducted the actual search of the records and completed the bottom of the form certifying that the search revealed one financing statement designating Boisclair as debtor, No. 835774, in favor of Aslesen Company. At Chemical's request, Central obtained a termination statement, filed in January 1986, revoking this lien. TSI subsequently updated the November search, first to late December and then to late January. No additional filings against Boisclair were reported.

Chemical released the loan proceeds to Central and, on February 19, 1986, filed a U.C.C. financing statement covering the collateral with the Minnesota Secretary of State.

In May 1986, Aslesen brought suit against Boisclair to foreclose on a lien. This lien was based on a U.C.C. financing statement, No. 825816, filed on July 5, 1985 naming Bois Clair Corporation as debtor. Bois Clair is a misspelling of Boisclair, the debtor's actual name. This purported lien covered the collateral included in Chemical's February 1986 filing listing Fitzger-

ald's as debtor. The sales proposal attached to financing statement No. 825816 describes the collateral and was executed by Ken Braun, an employee of Boisclair. Uncontested evidence indicates that Braun had no authority to grant a security interest in the property. It is also uncontested that this proposal was the only document Aslesen had evidencing a security agreement with Boisclair covering this collateral.

None of TSI's search reports revealed the existence of financing statement No. 825816. TSI was not requested to search for filings listing Bois Clair as debtor and TSI did not list Bois Clair as debtor on any of the U.C.C. 11 forms it submitted to the Secretary of State. In searching the records for debtor Boisclair, the Secretary of State did not look for filings under Bois Clair because the debtor had been identified as Boisclair. The usual procedure in the Secretary of State's Office would be to go directly to Boisclair to start the search and to stop the search after reaching the last filing in that name. There were at least seven filings between Bois Clair and Boisclair on the date of the search in question.

Chemical intervened in Aslesen's foreclosure action against Boisclair and settled Aslesen's claim by paying it $120,000 in return for release of the claimed lien represented by financing statement No. 825816.

Chemical then brought this action against TSI alleging that TSI failed to conduct the searches for liens against Boisclair properly and that TSI's failure to reveal the Bois Clair filing caused Chemical to pay for release of a lien allegedly superior to Chemical's claim to the collateral. Chemical asserts that, had TSI discovered and reported the Bois Clair filing, it would have required Central to terminate the financing statement at Central's expense.

BREACH OF WARRANTY CLAIM

 Because Chemical withdrew its breach of warranty claim during oral argument, this issue is not before the court. The court notes, however, that warranty law does not provide a basis of recovery in cases such as the one before the court.

Chemical did not assert the existence of an express warranty. Neither did Chemical provide any basis in law or fact for finding TSI impliedly warranted the results of the U.C.C. title searches it provided.

Implied warranties may be imposed by statute or may arise from a course of dealing. In the absence of express language, however, courts are reluctant to construe contracts for professional services as implying a contract of guaranty or insurance of favorable results. *Broyles v. Brown Engineering Co.*, 275 Ala. 35, 151 So.2d 767, 771 (1963). *See also, LeSueur Creamery, Inc. v. Haskon, Inc.*, 660 F.2d 342, 346 n. 6 (8th Cir.1981) (construing Minnesota law as limiting U.C.C. implied warranties to contracts in which the predominate aspect was sale of goods not services) *cert. denied,* 455 U.S. 1019, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982). One reason for this reluctance is that persons providing professional services frequently deal with factors beyond their control. Absent express agreement, professionals whose service is dependent on outside factors cannot be said to insure favorable results as a matter of common dealing. *Broyles,* 151 So.2d at 771. In cases addressing the liability of title examiners, courts have generally held that "abstractors are free from an implied agreement of guaranty in the preparation of abstracts, particularly where the service consists only in searching records for instruments affecting title. [Even though t]his service ... does not involve unknown or uncontrollable factors." *Id.* at 772. To treat a cause of action for nonfeasance or misfeasance of a contractually-imposed duty as sounding in warranty "might serve to extend an abstracter's duty beyond the duty anticipated by the original contract." *Williams v. Polgar,* 391 Mich. 6, 215 N.W.2d 149, 156 (1974). *See also Wacek v. Frink,* 51 Minn. 282, 284, 53 N.W. 633, 634 (1892) (abstractor does not become guarantor by furnishing certificate of title).

## NEGLIGENCE CLAIM

█ In support of its negligence claim, Chemical takes the position that TSI failed to use reasonable care in conducting a search of U.C.C. records. Chemical contends that a searcher has an obligation to search not only under the exact name of the debtor but also under various misspellings of the name. Chemical claims that TSI breached its duty by searching only for the exact name of the debtor and that TSI's negligence in failing to discover and report a financing statement designating Bois Clair (a misspelling of the name Boisclair) as debtor was the proximate cause of Chemical's loss of $120,000 to Aslesen.

One who undertakes to conduct a search of public records for another has a duty to exercise due care and skill in performing the search and in reporting the results. *See Wacek* 53 N.W. at 634. Neither party disputes that TSI owed a duty of reasonable care to Chemical. The question is whether TSI's failure to request the Secretary of State[1] to search under possible misspellings of the debtor's name constitutes a breach of that duty.

█ What conduct constitutes reasonable care is ordinarily a question of fact for a jury to decide. When the facts fail to leave room for ordinary minds to differ, however, the court is justified in characterizing conduct as not negligent. In this case, Chemical introduced no facts suggesting that a reasonable searcher should have anticipated that filings designating Boisclair as debtor might be filed under the name Bois Clair. Neither did Chemical present facts that might cause a reasonable

---

1. As Chemical points out, TSI never actually conducted a search of the filings but instead submitted a form to the Secretary of State listing the names of the entities it wanted searched. TSI then reported the results of the Secretary's search. At the time the search in question was requested, no one but the Secretary of State had access to the records. Thus, TSI could not have conducted the search personally. Chemical argues, however, that TSI should have known that the Secretary conducted literal searches and, therefore, should have requested searches under various spellings.

searcher to inquire regarding a possible filing under the name Bois Clair.[2]

The misspelling of a debtor's name is an issue that generally arises in the context of determining whether a financing statement is legally sufficient. In general, courts have been willing to validate a filing if a reasonable searcher would find the financing statement or would be put on notice to inquire elsewhere about it. *In re McGovern Auto Specialty, Inc.*, 51 B.R. 511, 513 (Bankr.E.D.Pa.1985) (quoting *In re Marta Group, Inc.*, 33 B.R. 634, 639 (Bankr.E.D.Pa.1983)). These cases offer some insight into the scope of a U.C.C. searcher's duty. For example, a professional searcher may be charged with knowledge of standard practices used by filing clerks in indexing financing statements and be required to take these practices into account in requesting a search. In *Citizens Nat'l Bank v. Wedel*, 489 N.E. 2d 1203 (Ind.Ct.App.1986), the bank designated "Post, Inc." as the debtor rather than "The Post, Inc.," its correct name, on the financing statement. In holding the omission of the article "The" was not seriously misleading, the court took judicial notice that "initial articles—'A', 'An', and 'The'—are commonly omitted when titles are organized alphabetically." *Id.* at 1207. Just as TSI was not permitted to personally search the U.C.C. records, searchers in *Wedel* were not permitted to inspect the files themselves but were "required to rely on the employees of the Secretary of State to report on the 'exact name' submitted for the search." *Id.* A request listing The Post, Inc. as the debtor to be searched failed to reveal the bank's filing. Although the court did not expressly address the searcher's duty, by holding the financing statement was not seriously misleading, the court inferred that the searcher should have requested filings under "Post, Inc., The."

■ A searcher may also have a duty to search under a variable spelling of the debtor's name if the spelling is commonly used by the debtor in conducting his affairs. In *In re Gustafson*, 14 U.C.C.Rep. Serv. 231 (Bankr.W.D.Okla.1973), the court held that a financing statement listing the debtor's surname as "Gustavsen" was sufficient despite the fact that the debtor's true name was "Gustafson." *Id.* at 235– 36. *Gustafson* is not a case involving a simple misspelling, however. Recognizing the debtor had conducted his affairs under the name Gustavsen for years, the court reasoned that a financing statement containing the debtor's "adopted and publicly accepted name" met the Code's notice requirement. *Id.* at 236. *Cf. In re Glasco, Inc.*, 642 F.2d 793 (5th Cir.1981) (use of trade name by which debtor generally known not misleading). *But cf. Pearson v. Salina Coffee House, Inc.*, 831 F.2d 1531 (10th Cir.1987) (use of trade name rather than legal name ineffective); U.C.C. 9–402 Comment 7 (trade names too uncertain to form basis of filing system). There are no facts before the court suggesting that Boisclair publicly adopted or even used the spelling Bois Clair.

Under facts similar to those presented here, the court in *John Deere Co. v. William C. Pahl Constr. Co.*, 34 A.D.2d 85, 310 N.Y.S.2d 945 (1970) concluded that it would be unreasonable to require a searcher to check for various possible misspellings. *Id.*, 310 N.Y.S.2d at 948. The transaction in *Deere* involved a debtor named Ranalli but the financing statement was filed under "Ranelli." The court determined the error was seriously misleading because the Code requires alphabetical filing and one searching for the name Ranalli "would not find any statement covering the equipment in question after he had exhausted all the Ranallis." *Id.* In the case at bar, it is uncontested that the Boisclair and Bois Clair statements were filed separately and that there were at least seven filings between the two. Moreover, an actual search by the Secretary of State did fail to reveal the Bois Clair filing.

---

**2.** This case does not address the issue of whether information in the records should have put the Secretary of State on notice of a possible filing under Bois Clair. Any possible negligence on the part of the Secretary cannot be attributed to TSI because under the circumstances TSI was required to rely on the Secretary's report.

Policy considerations behind the U.C.C. notice requirement support this court's conclusion that a searcher does not have a duty to hypothesize possible misspellings. The court in *First Agri Services, Inc. v. Kahl*, 129 Wis.2d 464, 385 N.W.2d 191 (Wis.Ct.App.1986), articulated these policy concerns in declining to impose a duty on a searcher to identify all partners of a debtor partner and search under each of those names.

> The notice filing system was adopted to create a simple system to provide reliable basic information to third persons without unduly burdening secured creditors.... Because the secured party is required to file an accurate financing statement, the Uniform Commercial Code properly provides that an incorrect financing statement is insufficient unless the error is minor and not misleading.... Variations in the debtor's listed name are of particular concern, because that name is the key to the indexing upon which the entire notice system relies.

*Id.* 385 N.W.2d at 194. Thus, the burden is properly on the creditor to make a proper filing and the creditor bears the risk of misfiling. The filing clerk is required to index the statement under the name he found in it and is not required to engage "in some second guessing." *In re Brawn*, 6 U.C.C.Rep.Serv. 1031, 1036 (Bankr.D.Me. 1969) (Brawn misspelled Brown). Permitting excessive latitude in the accuracy of a filing impermissibly shifts the burden from the creditor to the searching party. *See, e.g., Citizens Bank v. Ansley*, 467 F.Supp. 51, 55 (M.D.Ga.), *aff'd*, 604 F.2d 669 (5th Cir.1979). Accordingly, this court declines to impose a duty on searchers to search under possible misspellings of a debtor's name. Such a duty would undermine the purpose of the notice filing system by "promot[ing] careless filing" and "invit[ing] deceptive practices." *Id.* at 55.

Because this court finds that TSI was not negligent in failing to report the Bois Clair financing statement, it is not necessary to address the final element of Chemical's negligence claim, proximate cause.

This court finds that TSI was not negligent as a matter of law.

Accordingly, IT IS ORDERED that TSI's motion for summary judgment is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.