IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 19, 2009 Session

# METRO CONSTRUCTION CO., LLC v. SIM ATTRACTIONS, LLC, ET AL.

### Direct Appeal from the Chancery Court for Shelby County
### No. CH-02-0629-3     Kenny W. Armstrong, Chancellor

### No. W2008-01812-COA-R3-CV - Filed June 9, 2009

This case originated with a mechanic's and materialman's lien asserted by Plaintiff Metro Construction against commercial real property owned by Defendant/Cross Plaintiff Peabody Place Center in Memphis. It arises from improvements made by Metro Construction to a leasehold held by Defendant Sim Attractions. Sim Attractions abandoned the leasehold without compensating Metro Construction for the improvements, which included the installation of a several-ton race car simulator that remained in the abandoned leasehold. Defendant Fitraco claimed the simulator was its property under the terms of a lease agreement between Fitraco and Sim Attractions. It alternatively asserted a superior security interest. The trial court found that the simulator was personal property and determined that that the agreement between Sim Attractions and Fitraco was not a lease but an unperfected, disguised security agreement. The trial court attached the simulator to secure judgment in favor of Metro Construction. It also awarded Metro Construction discovery sanctions against Fitraco. The trial court awarded Peabody Place damages for lost rent. Fitraco appeals, asserting it had leased the simulator to Sim Attractions or, in the alternative, that it had properly perfected its security interest prior to judicial attachment by the trial court. It further asserts the damages claimed by Peabody Place were speculative. We reverse the judgment in favor of Metro Construction and affirm the judgment in favor of Peabody Place.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in part; Affirmed in part; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

John Lewis Wardlaw, Memphis, Tennessee, for the Appellant, Fitraco, N.V.

George D. McCrary, Bartlett, Tennessee, for the Appellee, Metro Construction Co., LLC.

Craig Morgan Beard, Memphis, Tennessee, for the Appellee, Peabody Place Centre, GP.

### OPINION

This appeal follows years of tortuous proceedings in the trial court that included international service of process through the Hague Convention on Defendant Fitraco, N.V. ("Fitraco"), a Belgian entity; an award of discovery sanctions against Fitraco;[1] and the resolution of matters not relevant to our disposition of this matter on appeal and upon which we find it unnecessary to elaborate here. The dispute revolves around a six-ton, eight-passenger race car simulator ("the simulator") installed by Plaintiff/Appellee Metro Construction Company, LLC ("Metro Construction") in a leasehold owned by Defendant/Cross-Plaintiff/Appellee Peabody Place Center, G.P. ("Peabody Place"). The retail leasehold was rented to and abandoned by Defendant Sim Attractions, LLC ("Sim Attractions"), a Wisconsin limited liability company. The determinative issues raised by this appeal are (1) whether, under the Uniform Commercial Code ("UCC"), Fitraco has an interest in the simulator superior to that of Metro Construction and (2) whether the trial court erred by awarding Peabody Place damages against Fitraco for lost rent during a six-month period in which Fitraco left the simulator in the leasehold.

The facts giving rise to this lawsuit are not disputed. The simulator was installed by Metro Construction as part of improvements it made to the Peabody Place leasehold in May 2001. The ten-year lease agreement executed by Peabody Place and Sim Attractions required Sim Attractions to pay monthly rent in the amount of $8,666, which included maintenance of the common areas and other pass-through charges. The enterprise was operated by Dan Schmick d/b/a Memphis Motor Speedway. In December 2001, Sim Attractions abandoned the leasehold, taking most of its personal property but leaving the installed simulator. Sim Attractions failed to pay Metro Construction for the improvements; failed to fulfill the terms of its agreement with Fitraco with respect to the simulator; and failed to fulfill the obligations of its long-term lease with Peabody Place.

On January 14, 2002, Metro Construction filed a notice of mechanic's lien against Peabody Place under Tennessee Code Annotated § 66-11-101, *et seq*. In its notice, Metro Construction asserted a lien in the amount of $70,583 for labor and/or material furnished to the leasehold and gave further notice that it would seek to enforce the lien and recover reasonable attorney's fees by attachment, suit, and court-ordered sale of the real property. Metro Construction recorded its lien against Peabody Place on February 8, 2002. In April 2002, Metro Construction filed a complaint to enforce the lien in the Chancery Court of Shelby County. It named as Defendants Peabody Place, Sim Attractions, and Dan Schmick d/b/a Memphis Motor Speedway.

On May 8, 2002, Metro Construction filed an amended complaint to add Fitraco and Fellion Enterprises, a Wisconsin entity, as Defendants. In its amended complaint, Metro Construction also sought judicial attachment of the simulator pursuant to Tennessee Code Annotated § 29-6-101 and "ultimately . . . an Order requiring that said property be sold in order to satisfy its claim[.]" Metro Construction posited that the simulator was a fixture where it was "a huge piece of equipment which had to be lifted by crane to the second floor . . . where it was bolted into the floor and 'hardwired'

---

[1] We note that Metro Construction holds Fitraco's local counsel, Curt R. Soefker, blameless for the conduct that resulted in sanctions, stating that Mr. Soefker "in every respect and in every instance, . . . has conducted [himself] in an imminently professional and courteous manner."

to the building, and thereafter, a fixed enclosure was constructed to surround it at the direction of the original Defendants . . . ." Metro Construction further asserted:

> There is no recordation or registration of any ownership interest in the race car simulator other than Sim Attraction, LLC and Dan Schmick d/b/a Memphis Motor Speedway. However, there is unconfirmed rumor that the race car simulator was manufactured by Fitraco, NV in Belgium and thereafter possession was passed to Fellion Enterprises who in turn passed possession to Sim Attraction, LLC and Dan Schmick d/b/a Memphis Motor Speedway. These two additional parties are therefore named only in an abundance of caution and for the purpose of notice in case they be later determined to be necessary parties in interest or maintain any claim to possession of the race car simulator.
>
> At the time that the Plaintiff . . . entered into its contract and performed the work and installation under contract with Sim Attraction, LLC, Metro Construction Co., LLC had no notice of any other possible interest holders, claims or necessary parties. Neither Fitraco N.V. nor Fellion Enterprises has filed a UCC-1 or other indice of interest.

Metro Construction also asserted that it had been unable to obtain service on either Sim Attractions or Dan Schmick, who apparently had left Tennessee. On May 8, the trial court issued a fiat attaching the simulator upon posting of a bond by Metro Construction.

Apparently unknown to Metro Construction, however, on January 22, 2002, Fitraco had filed a UCC Financing Statement in Wisconsin, where Sim Attractions was organized. The Financing Statement named Sim Attractions LLC as the debtor, Fitraco N.V. as the secured party, and the simulator as collateral. It also recited: "this fixture [sic] is precautionary only and is not to be construed as meaning that (a) any part of the equipment or any part thereof is a fixture or (b) any of the equipment or any part thereof is owned by debtor/lessee."

In July 2002, Metro Construction moved for default judgment and an order of the court directing an auction sale of the simulator. In September 2002, Fitraco moved to quash attachment of the simulator. Following a hearing on Metro Construction's motion, the trial court entered a default judgment against Sim Attractions and Dan Schmick, individually and d/b/a Memphis Motor Speedway, divesting them of any interest or claim of interest in the simulator. All other pending motions were deferred for later hearing.

In the meantime, in March 2002 Peabody Place was awarded a judgment against Sim Attractions for past due rent and the right to possession of the premises. In April 2002, Peabody Place notified Fitraco of its intent to take possession of the premises in accordance with the terms of a Waiver of Liens previously executed between Fitraco and Peabody Place. In May 2002, Peabody Place sent notice to Fitraco of the trial court's attachment of the simulator. On May 23, 2002, Fitraco acknowledged the April and May notices. In January 2003, Peabody Place informed

counsel for Fitraco and Metro Construction that it believed it had secured a tenant for the premises formerly occupied by Sim Attractions. Also in January 2003, Fitraco agreed to "bond around" the attachment order and agreed that the bond would be equal to Metro Construction's claim in the amount of $70,583. A consent order was entered to this effect. Fitraco failed to post the bond. On June 24, 2003, Fitraco deposited $112,583 with the court in lieu of a surety bond. The simulator remained in the Peabody Place premises until July 15, 2003. In August 2003, Peabody Place filed a cross-claim against Fitraco, seeking damages in the amount of the fair market rental value of the property, as determined by the court, during the period in which the simulator occupied the premises and Fitraco failed to post the bond required for removal.

After substantial discovery, the parties stipulated to 219 points of fact. In April 2006, Fitraco filed a motion to surrender the simulator, which had been in its possession since 2003, back to the court and to recover its cash deposit from the court. Metro Construction, however, opposed the motion, asserting the simulator had been damaged and required repairs in the amount of $20,000 to $30,000.

Ultimately, when this matter was heard by the trial court in 2006, the dispute between Plaintiff Metro Construction, Cross-Plaintiff Peabody Place, and Defendant Fitraco with respect to the simulator involved the determination of two issues: first, whether the agreement between Sim Attractions and Fitraco was a lease or a disguised security agreement subject to Article 9 of the UCC; second, if the agreement was a security agreement and not a lease, whether it had been properly perfected in accordance with Article 9 so as to give Fitraco a priority interest in the simulator superior to Metro Construction's claims. The resolution of the second issue, moreover, required the court to determine, as a factual matter, whether the simulator was properly classified as a fixture or personal property. Additionally, the litigation required the resolution of Peabody Place's cross-claim against Fitraco for lost rent during the period in which Fitraco failed to remove the simulator from Peabody Place.

Sitting without a jury, the trial court heard the matter in June 2006. The trial court found the simulator was not a fixture but personal property; concluded that the agreement between Fitraco and Sim Attractions purporting to lease the simulator to Sim Attractions was not a true lease but a sales document which created a purchase money security interest; determined that Fitraco had not properly perfected its security interest in the simulator under Article 9; and held that Metro Construction's interest in the simulator arising from judicial attachment was superior to Fitraco's interest. The trial court awarded Metro Construction a total judgment against Fitraco's interest in the simulator and/or the amounts deposited by Fitraco with the court in the amount of $75,503, plus interest in the amount of 8% per annum. It also awarded Peabody Place a judgment against Fitraco in the amount of $36,000 based upon the fair market value of the rental space at $6,000 per month and "the unreasonable and unnecessary delay by Fitraco in posting that bond which resulted in . . . the racecar simulator occupying valuable rental space unnecessarily and unreasonably for a period of six months." It also awarded Peabody Place interest on the judgment in the amount of 8% per annum. Additionally, the trial court determined that Metro Construction was entitled to discovery sanctions

under Rule 37.01(4) in the amount of $3,700. The trial court entered its amended judgment in the matter on March 19, 2007, and Fitraco filed a notice of appeal to this Court.

Oral argument was heard on July 19, 2007. We determined that the trial court's March 2007 order was not a final judgment, and on October 11, 2007, we entered an order requiring Fitraco to show cause why its appeal should not be dismissed for failure to appeal a final judgment. In December 2007, we dismissed Fitraco's appeal for failure to appeal a final judgment.

Following further proceedings, the trial court entered a second amended final judgment on July 8, 2008. In its July 2008 order, the trial court reiterated its judgment in favor of Metro Construction against Fitraco in the amount of $75,503 plus interest, and its judgment in favor of Peabody Place in the amount of $36,000 plus interest. The trial court granted Metro Construction's motion for voluntary dismissal of claims against Dan Schmick d/b/a Memphis Motor Speedway, and entered a default judgment in favor of Metro Construction against Sim Attractions. The trial court also entered a default judgment in favor of Metro Construction against Fellion Enterprises, divesting Fellion Enterprises of any interest in the simulator. Metro Construction's claim for attorney's fees was denied, except those related to Rule 37.01(4) sanctions. Fitraco filed a notice of appeal to this Court on August 5, 2008, and oral argument was heard on May 19, 2009.

On appeal, Fitraco asserts it leased the simulator to Sim Attractions and that its agreement was a "true lease." In the alternative, Fitraco asserts that if the agreement is in fact a security agreement, that it perfected its security interest as required by Revised Article 9 of the UCC and has priority over Metro Construction's interest in the property through judicial attachment. Additionally, Fitraco contends that damages asserted by Peabody Place for lost rent are speculative. Metro Construction and Peabody Place, on the other hand, assert the agreement between Fitraco and Sim Attractions was not a lease but a security agreement subject to the provisions of former Article 9, and, further, that Fitraco failed to properly perfect its interest under Article 9. Peabody Place asserts the damages it claimed for lost rent during the period in which Fitraco failed to post bond and remove the simulator from its premises are not speculative, but supported by the evidence.

Except for the award of discovery sanctions, which Fitraco has not appealed, we reverse the judgment of the trial court in favor of Metro Construction. We affirm the judgment against Fitraco in favor of Peabody Place.

### *Issues Presented*

Fitraco presents the following issues for our review:

(1)     Whether the trial court erred in concluding that the relationship between Fitraco and Sim Attractions was a true sale (as opposed to a lease).

(2)     Whether the trial court erred in concluding that Fitraco's security interest in the simulator was not properly perfected and, thus, inferior to Metro's alleged interest in the simulator.

(3)     Whether the trial court erred when it awarded Peabody Place's legally unrecognizable and speculative claim for lost rent.

### *Standard of Review*

The issues presented raise questions of law. We review questions of law *de novo*, with no presumption of correctness afforded to the determinations of the trial court. *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005).

### *Analysis*

The parties do not dispute the facts relevant to our analysis of the issues presented for our review. The simulator originally was sold by Camber UK Ltd., trading as Camber Entertainment ("Camber"), to SimFX, LLP ("SimFX"). SimFX then contacted Fitraco and asked Fitraco to purchase the simulator and lease it to SimFX.[2] The purchase agreement between SimFX and Camber was then assigned to Fitraco, and SimFX and Fitraco entered into the agreement in dispute here. This course of transactions included payment of a sizable downpayment by SimFx to Camber, the return of a part of that downpayment to SimFX by Fitraco, and purchase of the simulator by Fitraco. The simulator was delivered to SimFX. The agreement dated July 2000 provided that Fitraco, "not being the manufacturer of the Equipment nor the Manufacturer's agent" would not warrant or undertake to represent the quality, condition, or operation of the simulator. The agreement further provided that SimFX acknowledged that it had dealt directly with the supplier, and that it relied upon the Supplier's Agreement concerning matters related to warranties and quality. The agreement included a payment schedule requiring payment in the amount of $182,360 over thirty-six months by SimFX to Fitraco, and recited a "casualty value" of the simulator in the amount of $168,700. The agreement included a purchase option providing SimFX the option to purchase the simulator for $11,000 at the termination of the contract period. In May 2001, the agreement was amended and Sim Attractions was substituted as "lessee." With this background in mind, we turn to the issues presented on appeal.

### *Priority of Interests in the Simulator*

The parties have devoted considerable time and resources, here and in the trial court, to the question of whether the agreement between Fitraco and SimFX/Sim Attractions constitutes a lease

---

[2]The "lease agreement" entered into by SimFX and Fitraco in July 2000 stated:

Whereas Lessee has entered into an Agreement (the "Supplier's Agreement") with Camber Entertainment ("Manufacturer" or "Supplier") arranging the delivery and installation of one ESP Movieride theatre, Lessee has requested Lessor to purchase this equipment, in order to lease it.

under Tennessee law. We note, however, that the agreement contains a choice of law provision stating that the agreement shall be deemed to have been made in Pennsylvania and interpreted in accordance with Pennsylvania "laws and decisions." Thus, the character of the agreement between Sim Attractions/SimFX and Fitraco is properly determined in accordance with Pennsylvania statutory and case law.[3] We are disinclined to remand for a construction of the agreement under Pennsylvania law as it existed at the time the contract was executed in 2000, however, where resolution of the second issue presented by Fitraco is determinative to our resolution of this dispute. We accordingly turn to whether, assuming the agreement was not a lease but a "disguised security

---

[3]We note that, although the agreement may not be a conventional or traditional commercial lease in the ordinary sense under either Tennessee or Pennsylvania law, it arguably would now be considered a "finance lease" as provided by Title 13 of the Pennsylvania Consolidated Statutes Annotated, which currently defines a finance lease as:

A lease with respect to which:
(1) the lessor does not select, manufacture or supply the goods;
(2) the lessor acquires the goods or the right to possession and use of the goods in connection with the lease; and
(3) one of the following occurs:
> (i) the lessee receives a copy of the contract by which the lessor acquired the goods or the right to possession and use of the goods before signing the lease contract;
> (ii) the lessee's approval of the contract by which the lessor acquired the goods or the right to possession and use of the goods is a condition to effectiveness of the lease contract;
> (iii) the lessee, before signing the lease contract, receives an accurate and complete statement designating the promises and warranties, and any disclaimers of warranties, limitations or modifications of remedies, or liquidated damages, including those of a third party, such as the manufacturer of the goods, provided to the lessor by the person supplying the goods in connection with or as part of the contract by which the lessor acquired the goods or the right to possession and use of the goods; or
> (iv) if the lease is not a consumer lease, the lessor, before the lessee signs the lease contract, informs the lessee, in writing:
>> (A) of the identity of the person supplying the goods to the lessor, unless the lessee has selected that person and directed the lessor to acquire the goods or the right to possession and use of the goods from that person;
>> (B) that the lessee is entitled under this division to the promises and warranties, including those of any third party, provided to the lessor by the person supplying the goods in connection with or as part of the contract by which the lessor acquired the goods or the right to possession and use of the goods; and
>> (C) that the lessee may communicate with the person supplying the goods to the lessor and receive an accurate and complete statement of those promises and warranties, including any disclaimers and limitations of them or of remedies.

13 Pa. Cons. Stat. Ann. § 2A103(a)(West, Westlaw through June 2008 amendments). We note that the Uniform Commercial Code as adopted in Tennessee contains an identical definition. Tenn. Code Ann. § 47-2A-103(1)(g)(2001 & Supp. 2008).

agreement" subject to Article 9 of the UCC, Fitraco perfected its interest in the simulator so as to have priority over Metro Construction's interest.

In its brief to this Court, Metro Construction asserts its interest in the simulator is superior to Fitraco's "under two theories: (1) that it was a fixture so integrated into the realty that Metro's mechanics lien upon the property included the simulator . . . and (2) . . . by formal Judicial Attachment issued by the Chancery Court . . . ." The trial court found, however, that the simulator was not a fixture, and this determination has not been raised as an issue on appeal. Thus, Metro Construction's argument that the simulator is a fixture and that Fitraco failed to properly perfect a "fixture filing" in Tennessee is ineffectual.

We accordingly turn to whether Fitraco's interest in the simulator is superior to Metro Construction's interest by reason of judicial attachment. It is undisputed that, in March 2001, Fitraco filed a UCC-1 financing statement in Florida, where the simulator originally was located; that the simulator was moved from Florida to Memphis in or about March 2001; and that Fitraco did not file a financing statement or fixture filing in Tennessee. The parties also do not dispute that Fitraco filed a UCC-1 financing statement in Wisconsin on January 22, 2002, in which it named Sim Attractions LLC as the debtor, itself as the secured party, and the simulator as equipment collateral. Additionally, Revised Article 9 of the UCC became effective July 1, 2001. Therefore, when Metro Construction first acquired an interest in the simulator through judicial attachment in May 2002, Revised Article 9 was controlling. Thus, the questions regarding whether Fitraco had correctly filed in Florida in 2000, the effectiveness of its filing, and whether any asserted perfected interest in the simulator lapsed when the simulator was relocated to Memphis are irrelevant where Fitraco had filed a financing statement in January 2002, a filing that Fitraco asserts is proper under Revised Article 9.[4] The determinative issue, as we perceive it, is not whether Fitraco's interest was unperfected or lapsed when the simulator was relocated to Memphis. Indeed, as Metro Construction asserts:

> There is no indication in this record that Metro was even aware that the simulator had ever been in Florida, and the Florida UCC-1's identification of SimFX as the owner and not Sim Attractions would have meant nothing anyway. . . . The omitted relocation filing in Tennessee was Fitraco's first omission and the Florida filing, if ever valid, became void.

Rather, the determinative issue is whether Fitraco had a properly perfected security interest in the simulator, which the trial court determined was not a fixture, prior to the attachment of Metro Construction's interest on May 8, 2002, thereby giving Fitraco an interest in the simulator superior to that of Metro Construction. This determination is governed by Revised Article 9 of the UCC, effective July 1, 2001 (hereinafter, "Article 9").

---

[4]Revised Article 9 as adopted in Tennessee became effective July 1, 2001. (Acts 2000, ch. 846, § 1). Revised Article 9 superseded former Article 9 of the Uniform Commercial Code as adopted in Tennessee. Tenn. Code Ann. § 47-9-101 (2001), official comments.

Under Article 9, the law governing perfection of security interests is, subject to exceptions not present here, the law of the jurisdiction where the debtor is located.[5] UCC § 9-301; Tenn. Code Ann. § 47-9-301(1)(2001). It is undisputed that Sim Attractions is a Wisconsin limited liability company, and that it is "located" in Wisconsin for the purposes of Article 9. We therefore must turn to Article 9 as adopted by Wisconsin to determine whether Fitraco properly perfected its security interest.

The Wisconsin Code provides:

> (1) FILING OFFICES.
> Except as otherwise provided in sub. (2), if the local law of this state governs perfection of a security interest or agricultural lien, the office in which to file a financing statement to perfect the security interest or agricultural lien is:
> (a) The office designated for the filing or recording of a record of a mortgage on the related real property, if:
> 1. The collateral is as-extracted collateral or timber to be cut; or
> 2. The financing statement is filed as a fixture filing and the collateral is goods that are or are to become fixtures; or
> (b) The office of the department of financial institutions or any office duly authorized by the department, in all other cases, including a case in which the collateral is goods that are or are to become fixtures and the financing statement is not filed as a fixture filing.
> (2) FILING OFFICE FOR TRANSMITTING UTILITIES.
> The office in which to file a financing statement to perfect a security interest in collateral, including fixtures, of a transmitting utility is the office of the department of financial institutions. The financing statement also constitutes a fixture filing as to the collateral indicated in the financing statement which is or is to become fixtures.

Wis. Stat. Ann. § 409.501 (2003).[6] The financing statement included in the record evidences that Fitraco filed its UCC financing statement with the Wisconsin Department of Financial Institutions on January 22, 2002.

The Wisconsin Code further provides, in relevant part:

---

[5] We note that Revised Article 9 "divorces questions of perfection from questions of 'the effect of perfection and nonperfection and the priority of a security interest.'" Thus, in this case, although Wisconsin law governs perfection of Fitraco's security interest, Tennessee law governs priority where "the rights of competing claimants to tangible collateral are resolved by reference to the law of the jurisdiction in which the collateral is located" when the collateral is not located in the same jurisdiction of the debtor. UCC § 9-301 official comment 7.

[6] The Wisconsin section was amended in 2001 and is identical to Revised § 9-501 of the UCC. Wis. Stat. Ann. § 4-0.501 (2003) historical and statutory notes. The Tennessee provisions likewise are identical to Revised Article 9. *See* Tenn. Code Ann. § 47-9-510 (2001).

(1) SUFFICIENCY OF FINANCING STATEMENT.
Subject to sub. (2), a financing statement is sufficient only if it:
(a) Provides the name of the debtor;
(b) Provides the name of the secured party or a representative of the secured party; and
(c) Indicates the collateral covered by the financing statement.

Wis. Stat. Ann.§ 409.502 (2003).[7] The financing statement filed by Fitraco names Sim Attractions LLC as the debtor, lists Fitraco N.V. as the secured party, and indicates that "Equipment: 1 KSP simulator - serial #ESP020" is the covered collateral.

Metro Construction asserts, however, that Fitraco's filing is a misfiled fixture filing that should have been filed in Tennessee. The parties do not dispute that the filing contains the notation: "this fixture [sic] is precautionary only and is not to be construed as meaning that (a) any part of the equipment or any part thereof is a fixture or (b) any of the equipment or any part thereof is owned by debtor/lessee." We agree with Metro Construction that, had the trial court found the simulator to be a fixture, Fitraco's Wisconsin filing would have been ineffective. However, as noted, the trial court found the simulator to be personal property, and that finding has not been appealed. Accordingly, the issue here is whether Fitraco's filing in Wisconsin was effective where the collateral was determined to be personal property (equipment) and not a fixture. The Wisconsin Court of Appeals has noted:

> The notice filing system was adopted to create a simple system to provide reliable basic information to third persons without unduly burdening secured creditors. A financing statement failing to convey the information which a reasonably diligent third person requires to identify potential competing security interests in the debtor's assets is "seriously misleading."

> Because the secured party is required to file an accurate financing statement, the Uniform Commercial Code properly provides that an incorrect financing statement is insufficient *unless the error is minor and not misleading*.

*First Agri Serv's, Inc. v. Kahl*, 385 N.W.2d 191, 194 (Wis. App. 1986)(emphasis added). Likewise, this Court has observed,

> "[m]inor mistakes in financing statements are not fatal because Article 9 of the Uniform Commercial Code was intended to provide merely a system of notice filing. The financing statement was designed to be a statement filed publicly which would

---

[7]Tennessee Code Annotated § 47-9-502 (2001) contains an identical provision. Both Tennessee and Wisconsin have adopted the provision contained in § 9-502 of the UCC. The section adopts "notice filing." "The notice itself indicates merely that a person may have a security interest in the collateral indicated. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs." Tenn. Code Ann. § 47-9-502 official comment 2.

alert credit searchers that a certain security agreement may exist. Thus, even though there may be errors or deficiencies in description, addresses, names, and even signatures, such errors will not destroy the effectiveness of a financing statement so long as they do not frustrate the underlying purpose of the filing requirements in affording notice to creditors of the possible existence of security interests."

*First Nat. Bank of Shelbyville v. Tennessee Consol. Coal Co.*, Nos. 01A01-9208-CV-00326, 01A01-9211-CV-00466, 1993 WL 241289, at *4 (Tenn. Ct. App. 1993)(quoting *In re Service Lawn & Power, Inc.*, 83 B.R. 515, 517 (Bankr. E.D. Tenn. 1988)). Generally, a financing statement is not seriously misleading if it may be found using a standard search under the debtor's name. *In Re Silver Dollar, LLC*, 388 B.R. 317, 326 (Bankr. E.D. Tenn. 2008).

There is no dispute that Metro Construction was aware that Sim Attractions was located in Wisconsin. Had Metro Construction searched for a UCC filing in Wisconsin, where the debtor was located, it would have discovered Fitraco's filed financing statement. That Fitraco filed its financing statement as a "precautionary" measure, asserting its agreement with Sim Attractions was a lease, did not render the financing statement seriously misleading. Certainly, the financing statement was sufficient to put a reasonably diligent person on notice that Fitraco may have had a potential competing interest. Additionally, Fitraco clearly asserted that the simulator was equipment and not a fixture. The trial court agreed and, as noted, this determination has not been appealed.

Under Revised Article 9 as adopted in Tennessee and Wisconsin, Fitraco properly filed a financing statement giving sufficient notice of its interest in the simulator. Because the collateral - the simulator - was located in Tennessee, whether Fitraco's perfected security interest gives it priority superior to Metro Construction's interest pursuant to judicial attachment is governed by Tennessee law. UCC § 9-301(3)(C). Generally, but subject to exceptions not present here, Tennessee adheres to the "first to file" or the "first to perfect" rule to determine priority.[8] Tenn. Code Ann. §§ 47-9-317 (2001 & Supp. 2008), 47-9-322 (2001); *Willingham v. Gallatin Group, Inc.*, No. M1998-00990-COA-R3-CV, 2001 WL 134599, at *3 (Tenn. Ct. App. Feb. 16, 2001). A perfected security interest takes priority over a lien creditor. Tenn. Code Ann. § 47-9-317 (2001); *see Ingle v. Head*, No. W2006-02690-COA-R3-CV, 2007 WL 4530825, at *8 (Tenn. Ct. App. Dec. 26, 2007) (*no perm. app. filed*).

---

[8]As this Court has noted, "[d]ifferent claims may be governed by their own peculiar set of priority rules, and the content of each set of rules may vary depending on the kind of property involved and the nature of the competing claims." *Willingham v. Gallatin Group, Inc.*, No. M1998-00990-COA-R3-CV, 2001 WL 134599, at *2 (Tenn. Ct. App. Feb. 16, 2001).

We reiterate, "[w]hile priority conflicts may present commercial law teachers with 'delicious academic morsels,' 4 White & Summers, § 33-1, at 311, they have generally proved to be less appetizing to the bench and the practicing bar." *Id.*

In this case, Metro Construction's interest in the simulator arose not from a perfected security interest, but pursuant to judicial attachment. Its interest is that of a "lien creditor," defined by Article 9 as "a creditor that has acquired a lien on the property involved by attachment, levy, or the like[.]" Tenn. Code Ann. 47-9-102(52)(A)(2001 & Supp. 2008). Tennessee Code Annotated § 47-9-317 provides, in pertinent part

> A security interest or agricultural lien is subordinate to the rights of:
>     (1) A person entitled to priority under § 47-9-322; and
>     (2) Except as otherwise provided in subsection (e), a person that becomes a
> lien creditor before the earlier of the time:
>         (A) The security interest or agricultural lien is perfected; or
>         (B) One (1) of the conditions specified in § 47-9-203(b)(3) is met and a
>         financing statement covering the collateral is filed.

Tenn. Code Ann. § 47-9-317(a)(2001 & Supp. 2008). Metro Construction did not become a lien creditor before Fitraco perfected its security interest or before the conditions specified in § 47-9-203(b)(3) were met.[9] Therefore, Fitraco's security interest, perfected in January 2002, has priority over Metro Construction's interest as a lien creditor, which attached in May 2002. Accordingly, we reverse the trial court's judgment awarding Metro Construction a judgment against the simulator to satisfy its mechanic's lien and claims against Sim Attractions.

---

[9] Tennessee Code Annotated § 47-9-203(b)(2001) provides:

> (b) ENFORCEABILITY. Except as otherwise provided in subsections (c) through (i), a security interest is enforceable against the debtor and third parties with respect to the collateral only if:
>     (1) value has been given;
>     (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
>     (3) one (1) of the following conditions is met:
>         (A) the debtor has authenticated a security agreement that provides a description of the collateral and, if the security interest covers timber to be cut, a description of the land concerned;
>         (B) the collateral is not a certificated security and is in the possession of the secured party under § 47-9-313 pursuant to the debtor's security agreement;
>         (C) the collateral is a certificated security in registered form and the security certificate has been delivered to the secured party under § 47-8- 301 pursuant to the debtor's security agreement; or
>         (D) the collateral is deposit accounts, electronic chattel paper, investment property, or letter-of-credit rights, and the secured party has control under § 47-9-104, § 47-9-105, § 47-9-106, or § 47-9-107 pursuant to the debtor's security agreement.

The section was amended in 2008 to add "or electronic documents" and "§ 47-7-106" in (b)(3)(D). Tenn. Code Ann. § 47-9-203 (Supp. 2008).

### *Judgment in Favor of Peabody Place for Lost Rent*

We next turn to the cross-claim asserted by Peabody Place against Fitraco for lost rent during the period in which Fitraco failed to remove the simulator from the commercial rental property. The trial court awarded Peabody Place a judgment in the amount of $6,000 per month for the six months during which Fitraco failed to post bond and remove the simulator from Peabody Place, plus interest in the amount of 8% per annum. Fitraco asserts that the trial court erred in awarding the judgment because the damages asserted by Peabody Place were speculative. In its brief to this Court, Fitraco asserts, "Peabody Place cannot trace any lost rent to Fitraco's actions because it had no potential tenants." Fitraco submits, "[w]ithout any specific evidence of a tenant that was unable to lease the [p]remises because of the presence of the [s]imulator, the award of lost rent to Peabody Place must be deemed speculative."

Peabody Place, on the other hand, asserts that, because Fitraco failed to post a surety bond and remove the simulator from the premises as required by the January 2003 consent order entered in the trial court, Peabody Place was unable to rent the premises and suffered damages as a result. Peabody Place submits that in January 2003 it informed Fitraco that it believed it had found a replacement tenant for the premises, but that it could not complete an agreement with the prospective tenant, Sports Avenue, until Fitraco had removed the simulator. Peabody Place also contends that Sports Avenue intended to begin operations during the spring/summer tourist season and that, because Fitraco's delay in removing the simulator caused the premises to be unavailable in the Spring of 2003, it was unable to rent the space to Sports Avenue until March 2004.

It is undisputed that in January 2003 Peabody Place informed Fitraco that it believed it had secured a tenant for the rental space. The parties stipulated, moreover, that on January 21, 2003, "Peabody Place expressed an urgent desire to have the simulator removed from the [p]remises because it had what it believed to be a potential tenant. . . ." The parties also stipulated that, on the same day, Fitraco "volunteered to 'bond around' the attachment in order for Fitraco to take possession of the simulator," and that Fitraco failed to remove the simulator until July 15, 2003. The parties additionally stipulated that the premises had been leased to Sim Attractions at a monthly rent in the amount of $8,866; that a Landlord's Waiver executed by Peabody Place provided that Peabody Place acknowledged that the simulator "shall remain at all times the personal property of Fitraco[;]" and that the simulator had remained in storage in Atlanta since removal from Peabody Place in July 2003. Finally, the parties stipulated that the premises had been leased to Sports Avenue at the rate of $2,500 per month.

Clearly, in January 2003, Fitraco had actual notice that Peabody Place was in the process of negotiating with a replacement tenant, Sports Avenue. Sports Avenue did, in fact, eventually lease the premises, and the trial court made an implicit credibility determination that Sports Avenue would have leased the premises in Spring 2003 rather than Spring 2004 had it been available. Additionally, Fitraco simply failed to post bond in a timely fashion, leaving a several-ton race car simulator, which it asserted was its personal property, in the premises.

Fitraco does not argue that lost rent would not be the proper measure of damages in this case. Rather, Fitraco asserts the trial court erred in awarding damages because Peabody Place's claim was speculative. In light of the above recited stipulations by the parties, Peabody Place clearly had secured a replacement tenant for the premises. Moreover, we afford great deference to the trial court's apparent credibility determination that Sports Avenue would have occupied the premises in Spring 2003 had Fitraco removed the simulator as agreed in January 2003, and we will not re-evaluate that determination where it is not contradicted by clear and convincing evidence. *In re Adoption of A.M.H.,* 215 S.W.3d 793, 809 (Tenn. 2007). Where the trial court has utilized the proper measure of damages, the amount of damages is a question of fact which we review with a presumption of correctness. *Holladay v. Speed*, 208 S.W.3d 408, 415 (Tenn. Ct. App. 2005). In light of the totality of the record in this case, including the rental value of the leasehold at Peabody Place as reflected by the rental agreement between Peabody Place and Sim Attractions, and Fitraco's failure to post bond and remove the simulator for six months, resulting in lost rent in the amount of $2,500 per month for approximately twelve months, we cannot say the evidence preponderates against the trial court's determination.

### *Holding*

In light of the foregoing, the judgment of the trial court in favor of Metro Construction is reversed, except with respect to discovery sanctions. The judgment in favor of Peabody Place is affirmed. Remaining issues are pretermitted as unnecessary in light of this holding. Costs of this appeal are taxed one-half to Appellee Metro Construction Co., LLC, and one-half to Appellant Fitraco, N.V., and its surety, for which execution may issue if necessary.

DAVID R. FARMER, JUDGE